JOHN SHEEHAN *vs.* EDWARD FLYNN.

Argued Oct. 22, 1894. Reversed Dec. 14, 1894.

No. 8942.

**Common-law rule as to surface water obtains here but in modified form.**

The old common-law rule that surface water is a common enemy, which each owner may get rid of as best he can, is in force in this state, except that it is modified by the rule that he must so use his own as not unnecessarily or unreasonably to injure his neighbor. Under this rule, it is the duty of an owner draining his own land to deposit the surface

water in some natural drain, if one is reasonably accessible; and he is entitled to deposit the same in such natural drain, though it is thereby conveyed upon the land of his neighbor, if he does not thereby unreasonably injure him.

## What is reasonable under the circumstances must be regarded.

A circumstance to be considered in determining what is a reasonable use of one's own land, under this rule, is the amount of benefit to his estate thus drained, as compared with the amount of injury to his neighbor's estate by reason of casting the burden of the surface water upon it.

## The owner has the right to drain his land, but in a way least injurious to his neighbor.

Subject to these limitations, and the rule that he must in all cases do what is reasonable to dispose of the surface water to the least injury to his neighbors, such owner has a right to drain his own land for some proper use, and cast the water upon theirs, whether such drainage is the direct and sole purpose of the improvement, or only results incidentally therefrom.

## Cases criticised and disapproved.

*Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224; *Olson* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 419; and *Jordan* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 172,—criticised. *Rowe* v. *St. Paul, M. & M. Ry. Co.*, 41 Minn. 384, disapproved.

Appeal by defendant, Edward Flynn, from a judgment of the District Court of Washington County, *F. M. Crosby,* J., entered December 27, 1893, restraining him from laying drain pipe on his land to carry off water from a depression thereon.

Defendant owns the northwest quarter of section seventeen T. 29, R. 20, in the township of Baytown, Washington County. Twenty acres in the southwestern part of his land is slightly lower than the residue and has a deep rich soil, but in times of melting snow or heavy rains shallow water covers it until it soaks into the ground or evaporates. On the west line of the section is a highway running north and south and this depression extends across it and includes an acre or more west of the road. In 1871, defendant dug a ditch on his land about ninety rods long running from this depression east to the head of a small ravine or coulee upon and near the southeast corner of his land. This ditch drained the depression, and he was able to cultivate it and raise wheat and other grain thereon. But the ditch was neglected and the banks fell in and obstructed it so that after five or six years it failed to drain the depression. The

highway was sometimes nearly impassable at this point because of mud and water and on August 28, 1893, the supervisors of the town, to improve the road, laid out a ditch, under Laws 1874, ch. 57 (1878 G. S. ch. 13, §§ 101–108,) following the line of the old one. They agreed with the defendant to furnish eight inch sewer pipe and other necessary material and he agreed to waive all claim against the town for the right of way for the drain and to do the work of putting in the pipe. He was proceeding with the work and had it half done when the plaintiff, John Sheehan, commenced this action and obtained a temporary injunction restraining its further prosecution until the rights of the parties should be adjudicated.

Plaintiff owns the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of the same section. On his land near its center is a lake covering thirty acres with an outlet to the south flowing some distance through marsh and reaching the St. Croix river below Stillwater. The ravine or coulee commencing on defendant's land near his southeast corner runs south about eighty rods across land of a third party and gradually broadens into a marsh and empties into the lake on plaintiff's land. The surface of the depression on defendant's farm is forty feet above the surface of the lake and the ravine or coulee is the natural outlet for surface water from his farm. A few acres of plaintiff's land adjacent to the lake are low meadow and liable at times to overflow and in case the depression on defendant's farm is drained as proposed, the liability will be enhanced. Plaintiff set forth most of these facts in his complaint and prayed that defendant be restrained from draining the depression on his farm into the ravine and thence to the lake and that he have such other and further relief as should seem to the court equitable. Defendant answered, the issues were tried, findings filed and judgment entered thereon for plaintiff as prayed. Defendant appeals.

*J. N. Castle*, for appellant.

Defendant's wrongful acts consist in improving his land for agricultural purposes by providing for the removal of surface water from a portion of it. This portion is first class agricultural land. By draining in the usual way, it is available and very valuable for agricultural purposes. The loss if any to the plaintiff will be tem-

porary and trivial and not of such a character as to entitle him to damages. The facts bring this case within the common law rule with reference to surface water, which has been adopted by the courts of this state. *Schaefer* v. *Marthaler*, 34 Minn. 487; *Jordan* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 172; *Rowe* v. *St. Paul, M. & M. Ry. Co.*, 41 Minn. 384.

Another land owner may be damaged, but that does not necessarily give him a right of action. It is an incident to the ownership which owners are supposed to take into account when they purchase their property. If defendant's land naturally drains onto his neighbors, the neighbor takes the chances of his using his land in the usual way and draining the surface thereof. *Lee* v. *City of Minneapolis*, 22 Minn. 13.

*Fayette Marsh*, for respondent.

The supervisors of Baytown had not attempted to condemn the right to flow plaintiff's land. They had simply made a contract with the defendant to dig the ditch through his land and pour the water into the ravine which extended to the lake upon plaintiff's land, thus injuring two acres of it.

The water when collected to the depth of four feet over an area of twenty acres on defendant's land lost its character of surface water. *Schaefer* v. *Marthaler*, 34 Minn. 487; *Kauffman* v. *Griesemer*, 26 Pa. St. 407; *Rhodes* v. *City of Cleveland*, 10 Ohio, 160; *Livingstone* v. *McDonald*, 21 Ia. 160; *O'Brien* v. *City of St. Paul*, 25 Minn. 331; *McCarthy* v. *City of St. Paul*, 22 Minn. 527.

The decisions in this state have established the rule that defendant cannot rightfully cast this water upon defendant's land. The trial court so understood them and found for plaintiff. *Rowe* v. *St. Paul, M. & M. Ry. Co.*, 41 Minn. 384.

CANTY, J. Plaintiff is the owner of eighty acres of land, and the defendant of one hundred and sixty acres, all in the same section, but not adjoining, there being a forty-acre tract between the land of plaintiff and that of defendant. Bordering on the land of plaintiff is a lake covering about thirty acres, which does not touch the land of defendant. On one side of defendant's land is a depression in the surface of the ground, and in the seasons of high water, melting

snows, and heavy rains, in the spring, surface waters accumulate in it to a depth of about four feet, and cover about twenty acres. This depression extends somewhat beyond the line of defendant's land, and along this line is a highway, much traveled, which is more or less submerged and rendered impassable by the accumulation of water in this depression, and in the spring of 1893 this highway was by reason thereof impassable for two months. The surface water thus accumulated soaks into the ground, evaporates, and disappears during the summer seasons. The land thus covered by this surface water is fine agricultural land, of the same general character as the higher land around it. In 1871 the defendant dug a ditch ninety six rods long, all upon his own land, connecting this depression with the head of a small ravine on his own land, entirely draining the surface water from this depression, and conveying it into this ravine. The ravine carried it across the intervening forty acres between the land of plaintiff and that of defendant; then across plaintiff's land, and into the lake. The ditch was permitted to fill up in four or five years thereafter so as to prevent the escape of the accumulated surface water. The shores or banks of the lake are high and precipitous, except on the south side. Extending from the lake into plaintiff's land, for some distance, there is a slough which is nearly on a level with the lake, and, except in dry times, is filled with water.

In the month of August, 1893, the overseer of highways filed his affidavit with the chairman of the board of town supervisors, who issued a notice to this defendant, and such proceedings were had that the board condemned through the land of this defendant the right to reconstruct and maintain this ditch for the purpose of draining this highway, under and pursuant to 1878 G. S. ch. 13, §§ 101–108. Thereupon, the board contracted with defendant to reopen and reconstruct said ditch, and lay sewer pipe of the diameter of eight inches in the same, to carry off such surface water from said depression, and deposit it in the head of said ravine. When the defendant had the ditch partly reopened and the sewer pipe partly laid, this action was brought for an injunction restraining him from constructing such drain, and depositing such surface water on the land of plaintiff.

On the trial before the court without a jury, the court found all the foregoing facts, and also found that if such drain is constructed,

and such surface waters deposited in said ravine, and by it conducted into said lake, it "will raise the water in said lake, in the spring of the year, higher than it otherwise would be raised, and will submerge a quantity of plaintiff's land around the shores of said lake, that would not otherwise be submerged, to the extent of between one and two acres, which will damage said land in the sum of fifty dollars"; "that the waters which will accumulate in said depression will not flow upon plaintiff's land or into said lake without said ditch"; "that said ditch or drain is necessary to drain the water from said depression, and to render said highway passable at all seasons of the year, and to reclaim and make said depression good agricultural land."

On these findings the court ordered judgment for the plaintiff, and from the judgment entered thereon defendant appeals. No settled case or bill of exceptions was filed, and the question to be determined is whether the findings of fact sustain the judgment.

This plaintiff was not a party to the condemnation proceedings, and the town has no more right to cast this water upon plaintiff's land than defendant, in his own right, had and still has. In this respect, he and the town stand on the same footing.

We are of the opinion that the judgment is not sustained by the findings; that this is a case where the common-law rule as to surface water should be applied.

It is found that the improvement is necessary to drain the highway and the land of defendant. From this it must be inferred that there was no other reasonable way in which the depression could be drained, and no other natural drain into which the surface water could more reasonably be turned. The common-law rule as to liability for the diversion of surface water has been modified in this and other states by the rule that a person must so use his own as not unnecessarily or unreasonably to injure his neighbor. A circumstance to be considered in determining what is reasonable use of one's own land is the amount of benefit to the estate drained or improved, as compared with the amount of injury to the estate on which the burden of the surface water is cast. *Hughes* v. *Anderson*, 68 Ala. 280.

"But the extent to which any proprietor may go in these and other ways, in incidentally, while improving his own land, turning the sur-

face water of his own land off on the lands of others, must, in each case, be determined by the degree of comparative injury it may produce and relieve." Ray, Neg. Imp. Dut. 301. The benefit in this case will be the redeeming of twenty acres of fine agricultural land, and the restoring of this highway, while the injury will be the submerging, for some time in the spring, of an acre or two of such land as is found along the shore of such a lake.

It seems to us that the extent to which the common law is thus modified is well expressed in the case of *O'Brien* v. *City of St. Paul*, 25 Minn. 335, where it is said: "It [surface water] has been called a common enemy, which each owner may get rid of as best he may; and some cases—and not a few, indeed—maintain the owner's right to adopt any means he may choose to prevent it coming on his land, or to turn it off from his land, without regard to the consequences which may ensue to others. These cases are founded on an owner's assumed right to do absolutely what he will with his own. This right, however, is somewhat restricted by the maxim that 'a man must so use his own as not unnecessarily to do injury to another,'—a maxim which grows out of the necessities of society, and without which society would be hardly possible. A man's right to use his property is restricted, for instance, to the manner in which such property is ordinarily used." Again, on page 336, it is said: "Although we are not prepared to say that in no case can an owner lawfully improve his own land in such a way as to cause the surface waters to flow off in streams upon the land of another, we do not hesitate to say that he may not turn the water, in destructive currents, upon the adjoining land. * * * From the complaint, there does not appear any necessity, in grading the avenue, to collect the water at the point indicated, nor any difficulty in conducting it off without injury to private property."

This is a reasonable doctrine, that takes into consideration all the circumstances of each case. It gives each man the common-law right to improve and enjoy his own property to its fullest extent, but limited by the requirement that he use reasonable care in disposing of surface water, which the common law did not always require him to do. When he has used such reasonable care, he can generally stand on his common-law rights, whether such

surface water injures his neighbor or not. But the former decisions of this court are not all consistent with this rule, and it is necessary that we consider some of them.

In the case of *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224, (17 N. W. 374,) this court made the distinction that where the improvement was not made for the purpose of drainage, but drainage resulted as a mere incident from such improvement, the party is not liable for casting surface water on the lands of his neighbor, but where the improvement was made for the direct purpose of drainage he is liable. The distinction thus made in that case is approved or recognized in *Olson* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 419, (37 N. W. 953;) *Jordan* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 172, (43 N. W. 849;) and *Brown* v. *Winona & S. W. Ry. Co.*, 53 Minn. 259, (55 N. W. 123.) But it seems to us, after careful consideration, that, while the result arrived at in each of these cases is right, the distinction thus made is not well founded.

In *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, *supra*, the railway company, to drain its roadbed, dug two ditches, one on each side of the roadbed for some distance, connected them with a culvert across the roadbed, and with a ditch constructed from this point, extending away from the tracks for three miles, through low, marshy lands, and there terminating without connecting with any natural drain. From this point the water conducted by the ditch flowed off, over the flat prairie, six miles away, to plaintiff's farm, and flowed upon and injured it. It was held that these ditches having been made for the direct purpose of draining the roadbed, and not as incidental to some other improvement, the plaintiff was entitled to recover.

The case of *Olson* v. *St. Paul, M. & M. Ry. Co.*, 38 Minn. 419, (37 N. W. 953,) as reported, does not state the facts very fully; but, by a reference to the paper book in that case, it appears that on the trial, before the court without a jury, the court found that easterly from the line of the railroad, about five miles, there is a ridge of hills; that the surface water drains from these hills towards the railroad; that a large part of six intervening sections of land, "and some land lying immediately east of these sections, is and consists of swampy lands, and that these lands form a basin,

.and drain a vast portion of the country east and southeast of them; that the natural drainage of these lands is north, or west of north, across the land over which the railroad passes, and in the vicinity of the point where the ditch in question lies at right angles from the defendant's track."

The court then finds that the railroad company constructed its roadbed by raising it above the surface of the flat prairie, and for this purpose excavated ditches on each side of the roadbed; that, for the purpose of draining these ditches and its roadbed, it constructed seven culverts across its roadbed, and made the ditch in question three miles long, running directly west, at right angles to. its railroad, to a coulee, which, below the point of its connection with the ditch, gradually widens out until no longer perceptible; that this ditch carried vast quantities of water from this swamp into this coulee, which, at its mouth, deposited such water on the flat prairie, where it spread out,. and flowed some distance to and upon plaintiff's farm, and flooded it. It was held that he was entitled to recover.

In *Jordan* v. *St. Paul, M. & M. Ry. Co.*, *supra*, the defendant dug two large ditches, each six miles in length, one on each side of its road-bed, through low, wet land, and connected them with five large culverts. These ditches collected and accumulated large quantities of surface water, and discharged it on plaintiff's land, overflowing it and damaging his crops. The jury rendered a verdict for plaintiff; but also, by a special verdict, found that the ditches were made for the purpose of constructing defendant's road, and not for the purpose of drainage, and that such road was properly constructed, and in the usual and ordinary manner of constructing railroads in prairie countries. On these facts this court held that plaintiff was not entitled to recover, that the drainage obtained was merely incidental to the ordinary and necessary improvement of the land, and that the improvement was not for the mere purpose of drainage.

In *Brown* v. *Winona & S. W. Ry. Co.*, *supra*, the defendant built its railroad on the side of the hill, and excavated "borrow pits" on each side, with which to make the embankments. The water from the hill collected in the upper borrow pit, ran down to the lowest point of the depression, and through a culvert constructed across under the road-bed, and off over plaintiff's lot. It was held he could not recover.

In the opinion it is said (53 Minn. 259): "In *Hogenson* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 224, (17 N.W. 374,) the only attempt by defendant to improve its own land was by collecting surface waters naturally resting on it, and, by means of ditches, conducting them to, and depositing them on, the land of the plaintiff. * * * The test of liability must be, is the injury incidental to another man doing on his own land what he has a right to do, i. e. improve it for the purpose for which such land is ordinarily used, doing what is necessary for the purpose? It must, however, be understood that one cannot improve his own land by merely transferring waters which would naturally rest upon it to the land of another." It was held that the plaintiff could not recover.

It seems to us that the results in these cases can only be reconciled with each other, and with the other decisions of this court, by taking into consideration the general topography of the country where the cases arose. The court can take judicial notice of such general topography, of the general character of the natural drainage in different parts of the state, and of the location and character of the rivers flowing through the state. Bliss, Code Pl. § 189.

It seems to us that some confusion has arisen by failing to take into consideration the topography of the low, flat country in the Red River valley, where arose the *Hogenson* Case, the *Olson* Case, and the *Jordan* Case, and the more high, hilly, or rolling country in other parts of the state, where arose the other cases above cited, and such cases as *Kobs* v. *City of Minneapolis*, 22 Minn. 159, and *Pye* v. *City of Mankato*, 36 Minn. 373, (31 N. W. 863.) In each of the last two cases, as well as in the case of *O'Brien* v. *City of St. Paul*, *supra*, the city was held liable for collecting in its streets, by artificial means, large quantities of surface water, and casting it upon the land of an adjoining owner. The court had a right to take judicial notice that these cities are situated on large rivers, and in a part of the state affording many natural drains, and it will be presumed that it was not reasonably necessary to deposit elsewhere than in such a natural drain the surface water thus artificially collected on the streets. But such presumption will not ordinarily apply to the low, flat country in the Red River

valley, the greater portion of which is destitute of natural drains.

In the *Hogenson* Case the court did not take the topography of the country into consideration. The defendant constructed its railroad through a flat section of country, where there were no natural drains at all for surface water. It seems to us that the railroad company had a right to drain its roadbed, whether it could find a natural outlet for the water or not. There did appear a "difficulty in conducting it off without injury to private property," as laid down in the *O'Brien* Case. But in the *Hogenson* Case the defendant not only collected and deposited on the flat prairie the water which was necessarily so collected and deposited in draining its roadbed, but also the water in the swamp for three miles away from the roadbed. It did not do so for the purpose of improving the swamp, or making any use of it, but merely because it was somewhat more convenient to deposit the swamp water and the roadbed water all together on the prairie than to construct a ditch so that it would deposit only the roadbed water. It not only collected the water that was necessary in draining its road, but also the water in the swamp. It collected more than was necessary to drain its land, and was not acting in a reasonable manner, and for this should be held liable. The criterion of reasonable necessity should be held controlling in the law of surface water, both for and against the owner of the estate improved, and if the railroad company could reasonably have constructed its ditch leading away from its road, so as to collect less water from the swamp, it was its duty to do so.

But in our opinion it should not have been held liable for collecting and discharging on the flat prairie the water necessary to be discharged in draining its roadbed. It must discharge this water somewhere. If there was a natural drain within some reasonable distance, into which it could have discharged it, then it was its duty so to do. But if there was no such natural drain it became a question of necessity. It was not obliged to abandon its road. The water must be discharged, and must necessarily become the common enemy which the common law calls it. In such a case every man has the right to get rid of it as best he can, and the only remedy is a public system of drainage, which the public, and not the individual owner, must inaugurate.

In the *Jordan* Case, it seems to us, the defendant was not liable, not because the improvements were not intended for drainage purposes, which they were, but because the defendant had a right to make them, whether wholly or partly or not at all for drainage purposes.   As a matter of fact, the roadbed of a railroad in a flat country is usually raised for the sole purpose of drainage.   Of course, in the *Brown* Case, the roadbed was not raised for that purpose, but for the purpose of getting a level grade in an uneven or hilly country.   But the five culverts across the roadbed in the *Jordan* Case, the seven culverts in the *Olson* Case, the one culvert in the *Hogenson* Case, and the one culvert in the *Brown* Case, were constructed for no other purpose than for drainage.   They were not cattle guards.   The owners had a right to construct them for the sole purpose of drainage, subject to the limitation that they shall do what is reasonable to dispose of the surface water to the least injury to others; that they shall discharge it in some natural drain, if one is reasonably accessible, and it is practicable so to do.

If the reasons given for the decision in the *Jordan* Case are correct, the owner of a railroad can drain his roadbed by raising the roadbed, and can discharge the surface water accumulated thereby on the adjoining land, by means of culverts and ditches, though he has access to a natural drain; but the owner of a wheat field or pasture cannot drain it, and discharge the water on his neighbor's land, though he has no access to any natural drain.   It has been said that the common-law rule as to surface water was made in favor of agriculture, but this rule certainly was not.   It would require all flat, wet portions of the state to remain undeveloped and unimproved until improved by the public.

In the *Olson* Case it sufficiently appears that the surface waters from a great swamp, and "a vast portion of country east and south" of it, were collected into the ditches of the railroad company, and carried three miles west, to the false or spreading coulee, while "the natural drainage of these lands is north or west of north."   While this is not very definite, does it not amount to a finding that there was some natural depression running north, or west of north, which was the natural drain for this vast quantity of surface water?   If so, it sufficiently appears that the water was diverted three miles, directly west, into this false coulee.   On account of the topography of that country, a

slight depression may constitute a very important natural drain for surface water, and the unreasonable or unnecessary diversion of the water from the same would bring the case within the principle of the case of *McClure* v. *City of Red Wing*, 28 Minn. 186, (9 N. W. 767.) In that case it was held that the defendant was liable for obstructing a ravine with a well-defined channel, having high banks, and being between hills or bluffs, though no water ran in such channel, except surface water at the time of rains or melting snows. In the vicinity of Red Wing the country is hilly or rolling, and all ravines that drain any considerable extent of territory are deep, and have well-defined banks; but in the Red River valley large extents of territory are commonly drained of enormous quantities of surface water by slight depressions, which have no well-defined channels or banks, but still are well-defined water courses for surface water. It seems to us that it is the extent of territory that is drained, and the amount of water carried off, and not the height of the banks or hills, that control. In *McClure* v. *City of Red Wing, supra,* the court recognized a fact which so many courts ignore,—that they may violate the laws of nature, but cannot repeal them,—and we are in favor of extending rather than restricting the principle of that case.

The case of *Rowe* v. *St. Paul, M. & M. Ry. Co.*, 41 Minn. 384, (43 N. W. 76,) is another case arising in the Red River valley, in which the topography of the country was not taken into consideration. In that case it was held that the defendant railway company was not liable for building its roadbed across a natural depression in the flat prairie, so as to dam up the surface water which flowed along in such depression, though it drained an extensive territory, and carried off enormous quantities of surface water, which, by reason of such damming up, was turned back for several miles, and flooded the farm of plaintiff, a mile up the water course from the roadbed. The court applied the rigid common-law rule, and held plaintiff could not recover. It seems to us that the importance of such a natural drain brought it within the principle of the *McClure* Case. It also seems to us that the *Hogenson* Case and the *Rowe* Case cannot be reconciled on any sound principle. According to the doctrine of these two cases, it is lawful to obstruct nature, but not to assist her; it is lawful to turn surface water back, against the course of nature, in artifically accumulated quantities, but not law-

ful to assist it to go forward, according to the course of nature, in such quantities.

We hold that one has a right to drain his land for any legitimate use, whether for a railroad track, a wheat field, or a pasture, and whether the improvement is directly and wholly for the purpose of drainage, or whether it is for some other purpose, and such drainage is a mere incidental result. But, if he collect and convey the surface water off his own land, he shall do what is reasonable under all the circumstances, to turn it into some natural drain, or into some course in which it will do the least injury to his neighbor,—and, if he would prevent it from coming upon his land, he must not do so by obstructing some natural drain, and thereby hold back the water and flood the land of his neighbor, at least if such natural drain is an important one.

Applying these principles to the present case, we are of the opinion that these limitations on the common-law right of the owner to improve his land so as to rid it of surface water do not prohibit this defendant from draining this depression in the manner proposed. As before stated, it fairly appears that this is the only way he could reasonably drain this depression, and that this ravine is the only natural drain reasonably accessible; and the consequent injury to others is not so great, as compared to the benefit to be derived from the improvement, as to make it unreasonable on that account.

The judgment appealed from is reversed, and judgment ordered for defendant.

Collins and Buck, JJ., concur.

Gilfillan, C. J., absent on account of sickness; took no part.

Mitchell, J. While not wishing to commit myself to everything that is said in the foregoing opinion, I concur in the result, and substantially upon the grounds therein stated.

If the *dicta* in former decisions of this court, referred to in the opinion, mean that a man may not do, in the improvement of his own land, when the improvement consists of drainage, what he may do when the improvement consists primarily of something else, and drainage results as a mere incident thereto, then I agree that they

are not an accurate statement of the law. To hold that a man may not do for the purpose of improving his land for agriculture, when the improvement consists of draining it, what he may do when improving it by erecting a building or constructing a railroad upon it, would, as said in the opinion, be to discriminate against agriculture,—the very thing which the common-law rule as to surface waters was primarily designed to favor. If, on the other hand, these *dicta* mean simply that the owner of land has no right to rid his land of surface water by collecting it in artificial channels so as to divert it from its natural channel or outlet, and discharge it upon the lands of his neighbor, where it would not have otherwise gone, then I think they correctly state the law according to both the common-law and civil-law rule. This does not mean, however, that the owner of land is not permitted to improve it, but must abandon it to perpetual sterility, simply because its drainage would produce some change in the manner of discharging surface water, or in the amount discharged. It is not more agreeable to the laws of nature that water should descend than it is that lands should be farmed, or otherwise made productive. But in many cases this could not be done if an increased volume of water may not be discharged on the land of another. Hence, I think it well settled that a landowner may drain his land of surface water by artificial ditches, although the effect is to cause the water to pass more rapidly, and with increased volume, on the adjacent land of his neighbor, if the same water would not naturally flow in some other direction, and he acts with a proper regard to his neighbor's welfare.

That the water in this case is strictly surface water is very clear. It is also clear, from the facts found, that, if defendant had the right to drain his land at all, he has adopted the only feasible method of doing so, and has carried it into effect with the least possible injury to the plaintiff. It is also worthy of notice that the effect of digging the ditch is, not to cast a large volume of water, already accumulated, in destructive quantities, upon plaintiff's land, but to prevent such accumulation on defendant's land by providing a means of constant flow. The only thing that, to my mind, casts the least possible doubt upon the legality or reasonableness of defendant's acts, is the fact, found by the court, that without this ditch the water which will

accumulate in the depression on defendant's land would not flow upon plaintiff's land, but would remain on that of defendant until it is absorbed by the soil or evaporates.

Expressions will be frequently found in the adjudicated cases to the effect that the owner of land has no right to collect into artificial channels, and discharge upon the land of another, surface water which would not otherwise have gone upon it. Such expressions must always be construed with reference to the facts of the case under consideration. They are only true in a qualified or limited sense. Of course, a man cannot change or divert, to the prejudice of his neighbor, the natural outlet or drainage of surface water.

But the natural effect of any system of artificial drainage is to carry through the drain some water which would otherwise never have gone that way, but would have remained on the land until it was absorbed by the soil or evaporated in the air. For instance, suppose, in this case, there had been a natural ravine leading from the depression on defendant's land through to the lake on plaintiff's land, which furnished an outlet for part of this water. There would have been no doubt, under the authorities, of the right of defendant to aid and facilitate this natural system of drainage by deepening the outlet so as to carry off all the surface water, although the effect would be to cast upon plaintiff's land water which otherwise would not have gone there. But I can see no difference in principle between that case and this, so long as the defendant did not divert the water from some natural outlet, and has adopted the most reasonable, and only feasible, method of draining his land.

Upon the facts, I think that the acts of the defendant did not transcend what he might lawfully do in the reasonable improvement of his own land.

(Opinion published 61 N. W. 462.)