MATILDA NYE v. JOHN KAHLOW.[1]

May 11, 1906.

Nos. 14,708—(55).

**Diversion of Surface Water.**
    One who diverts surface water from the natural course of drainage, and by the digging of a ditch across a high strip of land casts it upon the land of his neighbor, is liable to him for the resulting damages.

**Review on Appeal.**
    The rule that assignments of error, not noted in the court below, will not be considered on appeal, applied.

Action in the district court for Le Sueur county to enjoin the maintenance by defendant of a drainage ditch by which surface water on

[1] Reported in 107 N. W. 733.

98 M.—6

defendant's land was diverted to the land of plaintiff, and to recover $1,000 for injuries to plaintiff's land caused by water so diverted. The case was tried before Cadwell, J., who made findings of fact and as conclusions of law found that plaintiff was entitled to a permanent injunction and to $25 damages. From an order, Morrison, J., denying a motion for a new trial, defendant appealed. Affirmed.

*W. H. Leeman,* for appellant.

*Thos. Hessian,* for respondent.

ELLIOTT, J.

From the findings of the trial court it appears that the plaintiff and defendant, respectively, are the owners of adjoining tracts of land in Le Sueur county. On the plaintiff's land, which lies south of the dividing line, there is a road which runs about parallel with and near the line. Seventy feet north of the line a ravine commences, and extends southwardly across the line and through the plaintiff's land. Where the road crosses this ravine the plaintiff has for her own convenience constructed a bridge, by filling the ravine with dirt and logs. Upon the land of the defendant there is a long marsh, with an area of about ten acres. The south end of this marsh is fifteen rods north of the line which divides the land of the plaintiff from that of the defendant. The natural course of the waters from the marsh is in a northerly direction, across the lands of the defendant, into a creek, and thence into the Minnesota river. Between the north end of the ravine and the marsh there is a high strip of land, and the natural flow of the water to the north of this high land is over the marsh, into the creek, and thence into the river. The waters south of this divide flow naturally south into the ravine and thus over the plaintiff's land. In the year 1900 the defendant dug a ditch from the south end of the marsh across the high strip of land between the marsh and the head of the ravine. This ditch was ten rods long, three feet deep, and eight feet wide at the top, and was wholly on the defendant's land. By reason of this ditch the waters in the marsh on the defendant's land were diverted from their natural course and caused to flow upon the land of the plaintiff. Water which naturally rested upon the defendant's land was thus transferred to the plaintiff's land. As a result, the water washed out a part of the bridge which the plaintiff had constructed over the ravine, and also

washed away a part of the soil. The court found that, "unless said ditch so dug by the defendant is closed up, the land and premises of the plaintiff will be hereafter injured by the waters flowing through said ditch upon her land."

Upon these facts the court found that the plaintiff was entitled to recover $25 damages, and enjoined the defendant from further maintaining the ditch. The appeal is from an order denying the defendant's motion for a new trial.

1. The appellant makes four assignments of error, but as the second and third were not specified in the motion for a new trial, and are made in this court for the first time, they cannot be considered. Cappis v. Wiedemann, 86 Minn. 156, 90 N. W. 368; Parker v. Pine Tree Lumber Co., 89 Minn. 500, 95 N. W. 323; Conan v. City of Ely, 91 Minn. 127, 97 N. W. 737.

On the motion for a new trial the defendant assigned as error that "said decision is not justified by the evidence and is contrary to law." It has been held in numerous cases that this is insufficient to call in question any of the findings of fact. Butler-Ryan Co. v. Silvey, 70 Minn. 507, 73 N. W. 406, 510; Mahler v. Merchants Nat. Bank, 65 Minn. 37, 67 N. W. 655; Dallemand v. Swenson, 54 Minn. 32, 55 N. W. 815; Moody v. Tschabold, 52 Minn. 51, 53 N. W. 1023; In re Granstrand, 49 Minn. 438, 52 N. W. 41; Smith v. Kipp, 49 Minn. 119, 51 N. W. 656; Union Cash Register Co. v. John, 49 Minn. 481, 52 N. W. 48. The assignments thus excluded from consideration are the only ones which assume to question the correctness of the findings of fact. As said in Smith v. Kipp, 49 Minn. 119, 51 N. W. 656: "It is not our province to determine in the first instance, and from the evidence presented in another court, the facts of a case. We must take the facts of the case to be as they have been established by the findings of the trial court, except that upon a proper assignment of error we may review the same and determine whether they are justified by the evidence."

2. The remaining assignments relate to the amount of damages and question the correctness of the conclusions of law. The evidence amply sustains the finding that the plaintiff was damaged to the extent found by the court. The defendant contends that the water in the meadow upon his land was surface water, and that he therefore

"had the right to divert it, or do with it as he pleased on his own land, as long as he did not unreasonably injure adjoining land owners." This may be accepted as a correct statement of the rule of law. But it is clear that in disposing of the water he did unreasonably and unnecessarily injure the property of his neighbor. The law relating to the disposition of surface water is now well settled in this state. The common-law rule is accepted with one material modification.

In Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, after reviewing the earlier decisions and criticising some of them, it was held that the old common-law rule that surface water is a common enemy, which each owner may get rid of as best he can, is in force in this state, modified by the rule that the owner of land must so use his own as not to unnecessarily and unreasonably injure his neighbor. See Werner v. Popp, 94 Minn. 118, 102 N. W. 366. It appears that in the Sheehan case the method adopted for the drainage of the defendant's land was the only one by which he could reasonably drain the depression in which the surface water had accumulated and that the ravine into. which the water was turned was the only natural drain reasonably accessible. In a concurring opinion, Justice Mitchell said that: "There would have been no doubt under the authorities of the right of defendant to aid and facilitate this natural system of drainage by deepening the outlet so as to carry off all the surface water, although the effect would be to cast upon the plaintiff's land water which otherwise would not have gone there. But I can see no difference in principle between that case and this, so long as the defendant did not divert the water from some natural outlet, and has adopted the most reasonable and only feasible method of draining his land."

The defendant in this case did exactly what the court in the Sheehan case said he must not do. He not only did not adopt the most feasible method of draining his land, but he diverted the water from the natural drainage outlet. The water collected in the marsh north of the divide. In the natural course it then found its way northwardly into the creek, and thence into the Minnesota river. If the irregularities in the height of the land along this course prevented all of the water from escaping, it would have been a very simple matter for the defendant to improve the channel by removing the obstruction. But it appears that, instead of doing this, he obstructed the natural channel by constructing

a road across the marsh, thus effectually preventing the water in the southern part of the marsh from flowing northward into the creek. In order to get rid of this accumulation of water he dug the ditch across the high strip of ground and turned the water southwardly into the head of the ravine and over the plaintiff's land. He thus diverted the water from the natural outlet and unnecessarily cast it upon the land of the plaintiff, to her harm. There was no necessity for adopting this course. By aiding the flow of the water along its natural course to the northward, he could have drained the marsh without material injury to his own property. The course he adopted was unnecessary for the enjoyment of his own property, and unnecessarily and unreasonably inflicted injury upon the plaintiff. The fact that a few feet of the defendant's land lay south of the divide and naturally drained southwardly into the ravine is of no consequence. No damage resulted from the natural flow in that direction.

The conclusions of the trial court were therefore correct, and the order appealed from is affirmed.

JAGGARD, J. (dissenting).

I dissent. The doctrine laid down in Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, and in other cases following it, is subject to persistent, and in large measure just, criticism. It is based primarily upon the proposition that one man's necessities may be the measure of another man's legal right. It has, however, been enforced so long and so often as to become a rule of property. It would therefore be unfair and unjust to refuse to apply it to cases to which it is of reasonable necessity applicable. There is, however, no reason for extending it beyond its strict logical sequences. State v. Board of Co. Commrs. of Isanti County, infra, page 89. It does not seem to me, however, that it necessarily results in the conclusions reached in this case by the majority opinion. Here a certain amount of surface water was naturally drained from the defendant's premises southerly into a ravine on his premises, which began seventy feet from the southern end of them and flowed thus through that ravine, past plaintiff's land, into the river. The plaintiff had built a bridge, by making a fill on her own premises across that ravine, and had put in a pipe in that bridge through which a limited amount of water could flow. She had

a legal right to build that bridge. So far as anything appears in this record, she was under no necessity to provide means for the escape of the waters it might accumulate. The pipe she put under the bridge was apparently designed to protect her own structure and premises. Correspondingly the defendant, as he had a right to do, constructed a road on his own land, the result of which was that some surface water, which would naturally have flowed north on his own land, as a matter of fact flowed south on his own land. To discharge this surface water on defendant's own land into the ravine on his own land, he dug a ditch on his own land. This I think he had a right to do. His operations were exclusively on his own premises, as a result of which surface water flowed down a clearly marked and natural drain beginning on his own land and naturally carrying away surface water from parts of his own land. In law what he did was the same as if he had drained surface water into a natural watercourse flowing through his premises. He merely increased the natural flow of surface water through a natural watercourse. For it is well settled in this state that such a ravine running into a river in a broken or bluffy country is a natural watercourse. McClure v. City of Red Wing, 28 Minn. 180, 9 N. W. 767; Gibbs v. Williams, 25 Kan. 214, 37 Am. 241. No injury in consequence accrued to the plaintiff although damage may have resulted.

The common law did not require defendant to adopt the most feasible method of draining his land as this or any other court may define that method. Even within the law of Sheehan v. Flynn, he had a legal right to do as he did. Judge Mitchell's concurring opinion in that case has been the basis of subsequent opinions following its conclusions. In it Judge Mitchell said: "For instance, suppose in this case there had been a natural ravine leading from the depression on defendant's land through to the lake on plaintiff's land, which furnished an outlet for part of this water. There would have been no doubt under the authorities of the right of defendant to aid and facilitate this natural system of drainage by deepening the outlet so as to carry off all the surface water, although the effect would be to cast upon plaintiff's land water which otherwise would not have gone there." The effect, although not necessarily the reasoning of Werner v. Popp, 94 Minn. 118, 102 N. W. 366, is clearly consistent with this view.