AUGUST E. WILL v. ALANSON M. BOLER AND ANOTHER.[1]

June 5, 1942.

No. 33,126.

[1]Reported in 4 N. W. (2d) 345.

*V. V. Lindgren* and *Frundt & Morse,* for appellants.
*McCune & McCune,* for respondent.

JULIUS J. OLSON, JUSTICE.

This was a suit to restrain defendants from damming and obstructing a ditch and to compel removal of obstructions placed therein by them. Plaintiff prevailed. Defendants' alternative motion for amended findings or new trial being denied, they appeal.

The essential facts may be thus summarized: The lands involved lie in section 16 in Nashville township, Martin county. Plaintiff owns and occupies the NW¼ and as tenant uses and occupies the adjoining 80 to the east. Defendants own and occupy the SE¼. Over a portion of the section there exists a natural swale or watercourse carrying surface waters which gather in the south of the section. The water flows northerly through the larger part of defendants' quarter and near the easterly boundary thereof, then turns and flows in a general northeasterly direction through the NE¼, where it outlets into a "more substantial watercourse or ravine."

In 1903, the owners of the lands affected by the surface waters so gathering upon their lands lying near or adjacent to this natural draw got together and constructed a "bull ditch along and in said watercourse." The ditch "was constructed and paid for by voluntary contributions of the owners of the lands benefited thereby." It substantially accelerated the flow of water, was "permanent in its nature," and designed to be an improvement upon the flow of water within the benefited area. Until 1938 the ditch was well maintained and functioned satisfactorily. But during that year defendants plowed the land along the edges of the ditch so as to fill it. This was directly opposite a point where, prior to the construction of the bull ditch, much of the water divided, some flowing northwesterly onto the $SW\frac{1}{4}$ and thence onto plaintiff's land, and the balance north and northeasterly. Obviously, the ditch was designed to avoid this division of the water and to lead it into the new and better channel afforded by the ditch. Defendants also constructed a dam or dike in such fashion as to cause surface waters coming from the south to take the former northwesterly course and thus be diverted onto plaintiff's land. The ditch was dug to help get rid of surface water and to lead it into a single and more direct channel to the common outlet farther north. No part of the ditch lies upon plaintiff's $NW\frac{1}{4}$, but it does extend into and upon the 80-acre tract farmed by him lying to the east of his own quarter.

Plaintiff did not become the owner of the $NW\frac{1}{4}$ until 1926. At that time the ditch was functioning. The prior owner had caused a tile to be constructed from the low point on his quarter leading northeasterly and into an appropriate outlet farther north. That defendants' conduct in filling the ditch and building the embankment on their own land has caused harm to plaintiff is clear, and the court properly so found. And it is equally clear that because thereof plaintiff's land has been inundated since 1938 by surface waters, a condition which ordinarily would have been avoided if the natural drain as improved by the bull ditch had been permitted to remain. In consequence, the court held that de-

fendants should be and "are estopped from obstructing, diverting or interfering with said ditch." It ordered that a mandatory injunction issue requiring defendants to remove "from said drain and natural watercourse all dirt and other material plowed into or filled therein which impedes the flow of water" and "to remove said ridge and cease, desist and refrain from reconstructing the same."

Defendants challenge the sufficiency of the evidence to support the court's findings (1) that there "is a natural watercourse" through section 16 in which the ditch was laid, and (2) that plaintiff's predecessor in title and interest contributed to the expense incurred in the construction of the ditch.

1. It is true that there are no "well defined banks" along this depression, nor did the court find "the depth or width of such watercourse." As to lack of well defined banks, we do not believe the objection is well taken. Under such cases as Halverson v. Halverson, 133 Minn. 78, 157 N. W. 1001, and Town of King v. Brekke, 151 Minn. 474, 187 N. W. 515, the test there announced has been well met by the evidence in this case. In the Brekke case we said (151 Minn. 477, 187 N. W. 516) that where surface water (and that is all we are concerned with here) is conveyed through natural means from the property of one landowner to that of another and where there is a natural depression which affords a place of flowage for the water, the lower owner, in the absence of any means of natural "drainage into which the water could more reasonably be turned," may not fill the depression so as to interfere with the flowage of the water therein even though the depression may not amount to what is known as a "swale."

From time immemorial, this draw or depression has been the means of carrying surface waters. Water undoubtedly created it. Nature's hand shaped it. By the aid of man's efforts it was improved. The court's finding cannot be disturbed, since it is apparent that the ditch constructed along and in the course of this depression was undertaken by those directly interested in the

project. By 35 years of actual experience its worth has been amply proved.

In addition, there is the testimony of Claude Boler, a disinterested witness, who was 18 years old when the ditch was constructed and who was born and reared on an adjoining farm, that "there was a natural swale up into the northeast" of defendants' quarter.

2. With regard to the claimed lack of proof that plaintiff's predecessor then in title and possession contributed to the expense of the construction, we have the testimony of defendant Alanson Boler:

Q. "And do you know whether or not they [the landowners] all paid for it without any court proceedings?

A. "They did—they all paid for it without any court proceedings."

What was then (in 1903) actually done and for more than 35 years thereafter maintained goes a long way to prove that the project was a joint undertaking which "they all paid for."

3. In the circumstances presented; we think that Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, and the many subsequent cases following it, furnish adequate support for the trial court's order. The first headnote, well sustained by the opinion, reads:

"The old common-law rule that surface water is a common enemy, which each owner may get rid of as best he can, is in force in this state, except that it is modified by the rule that he must so use his own as not unnecessarily or unreasonably to injure his neighbor. Under this rule, it is the duty of an owner draining his own land to deposit the surface water in some natural drain, if one is reasonably accessible; and he is entitled to deposit the same in such natural drain, though it is thereby conveyed upon the land of his neighbor, if he does not thereby unreasonably injure him."

4. The general rule applicable to the present facts is stated in 6 Dunnell, Dig. § 10157a, and cases cited under notes:

"Where neighboring landowners unite in the construction of a ditch to drain and improve their several holdings, each of them is thereafter estopped from closing the ditch in a way to deprive the others of the drainage provided."

We can find no legal justification for defendants' acts in destroying, as to plaintiff, the usefulness of the ditch. By filling and damming it, plaintiff was deprived "of all benefits from its construction while they retain" its benefits "for their own use." Such conduct fully justifies a court of equity to "interfere to restrain it." Munsch v. Stelter, 109 Minn. 403, 406, 407, 124 N. W. 14, 15, 25 L.R.A.(N.S.) 727, 134 A. S. R. 785. In such a case injunctive relief was properly granted. *Cf.* Schuette v. Sutter, 128 Minn. 150, 152, 150 N. W. 622; Stoering v. Swanson, 139 Minn. 115, 118, 165 N. W. 875.

5. The test of liability is reasonable use, not reasonable care or negligence. Bush v. City of Rochester, 191 Minn. 591, 593, 255 N. W. 256. Helpful, too, are Skinner v. G. N. Ry. Co. 129 Minn. 113, 115, 151 N. W. 968, and Peterson v. N. P. Ry. Co. 132 Minn. 265, 270, 271, 156 N. W. 121.

That plaintiff purchased his property in good faith and upon the strength of conditions as they then existed is abundantly shown. And, since the court has found upon adequate evidence that the diversion of the water caused by defendants' dam and the filling of the ditch south of the dam caused plaintiff "infinitely more damage * * * than the benefits" derived by defendants' land, no one can reasonably claim that such a situation may be continued without redress.

There are other assignments of error, but these, upon examination, are not found of sufficient importance to require separate discussion.

Order affirmed.

Mr. Justice Stone, absent because of illness, took no part in the consideration or decision of this case.