**UNITED STATES v. SHAPIRO, Inc. et al.,**
**Civ. No. 2707.**

United States District Court
District of Columbia.
Oct. 24, 1951.

Ross O'Donoghue and William R. Glendon, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Whiteford, Hart, Carmody & Wilson, John J. Carmody and Jo Morgan, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This action involves property of the plaintiff known as the National Zoological Park, in the city of Washington. Adjoining it on the south is the defendants' property, which is unimproved and vacant.

The defendants made a change of grade in their property, as a result of which the direction of the drainage was diverted in such a manner as to carry debris in a northerly direction and deposit it against a fence erected by the Government along the boundary line between the Zoological Park and the defendants' property. This fence extends beyond the defendants' property, and also separates the Zoological Park from government property belonging to another government agency. The land belonging to the other government agency, which adjoins the defendants' property as well, is not referred to in the pleadings or in the pretrial order, and therefore may not be considered in this litigation.

The Government claims that as a result of the deposit of debris, the fence, which is of a wire-mesh construction, has been damaged in a number of places. The principal question to be determined on this motion to dismiss at the close of the plaintiff's case is whether, assuming these facts to be true, the Government has a right to the injunction for which it prays, or to damages, or both.

It was held by the Court of Appeals for the District of Columbia, in Frisbie v. Cowen, 18 App.D.C. 381, that a property owner may not construct a

ditch that would empty its contents upon adjoining property. In other words, one property owner may not cause water, soil, dirt or debris to be deposited on adjoining land. That case, however, is not authority for maintaining the action now before the Court, because we are confronted with a situation here in which nothing was physically deposited on the plaintiff's land, and the question arises whether the damage to the fence is *damnum absque injuria*.

There is no contention that the defendant was guilty of any negligence in the manner in which he graded his property, or that he did anything unusual, or that he did anything malevolently. He graded his property, as many owners do. He had a right to regrade his property, just as the District of Columbia has a right to regrade its streets. It has been held, time and time again, that the District of Columbia is not liable to adjoining property owners for damages caused by regrading of a street. It would seem by analogy that one property owner should not be liable to an adjoining property owner for alleged damages caused by regrading unless there was a physical invasion, or a physical encroachment on the adjoining property.

While this point has not been passed upon in this jurisdiction, there are two cases that are somewhat analogous and helpful.

In Baltimore & Ohio R. R. Co. v. Thomas, 37 App.D.C. 255, and Pearce v. Scott, 58 App.D.C. 257, 29 F.2d 630, it was held that a property owner is not liable to his neighbor if he constructs an embankment or a fill which obstructs the flow of surface water from his neighbor's land onto his own land. These cases present a situation which is the reverse of that confronted in this litigation.

The leading English case of Rylands v. Fletcher, 3 English and Irish Appeals 330, 338, which is a classic in the law of real property, contains a discussion that I think throws light upon the question here involved. In that case the owner of a mine constructed a reservoir on his property. The water from the reservoir flooded his neighbor's property, and the neighbor was allowed to recover. There we have a case of a physical invasion of adjacent property. Lord Chancellor Cairns, an eminent jurist, said:

"The defendants, treating them as the owners or occupiers of the close on which the reservoir was constructed, might lawfully have used that close for any purpose for which it might in the ordinary course of the enjoyment of land be used; and if, in what I may term the natural use, of that land, there had been any accumulation of water, either on the surface or underground, and if, by the operation of the laws of nature, that accumulation of waste had passed off into the close occupied by the plaintiff, the plaintiff could not have complained that that result had taken place. If he had desired to guard himself against it, it would have lain upon him to have done so, by leaving, or by interposing, some barrier between his close and the close of the defendants in order to have prevented that operation of the laws of nature.

\* \* \* \* \* \*

"On the other hand if the defendants, not stopping at the natural use of their close, had desired to use it for any purpose which I may term a non-natural use, \* \* \* and if in consequence of their doing so, or in consequence of any imperfection in the mode of their doing so, the water came to escape and to pass off into the close of the plaintiff, then it appears to me that that which the defendants were doing they were doing at their own peril."

In other words, if the use is a natural one—and grading one's property is a natural use—then the property owner is not liable for consequential damages to his neighbor's property, especially if there is no physical invasion of the neighbor's property.

There is another English case, which I think is very similar in principle to the case with which we are dealing here, Smith v. Kenrick, 7 C.B. 515, 137 Eng.Reports 205. In that case there were two adjoining coal mines. The owner of one of the mines, in the course of working the mine, removed a horizontal bar of coal which adjoined his neighbor's property, thereby causing water to escape into the latter. It was

held that the neighbor had no cause of action.

Mr. Justice Holmes, in Middlesex Co. v. McCue, 149 Mass. 103, 105, 21 N.E. 230, 231 said: "a man has a right to cultivate his land in the usual and reasonable way, * * * and that damage to the lower proprietor of the kind complained of is something that he must protect himself against as best he may."

It has been said time and time again that a land owner, who is not guilty of negligence, may in the ordinary use of his property cause a change in the direction of the drainage without liability to the proprietor of the adjoining property. Hengelfelt v. Ehrmann, 141 Neb. 322, 327, 3 N.W. 2d 576; Harrison v. Poli-New England Theatres, 304 Mass. 123, 23 N.E.2d 99; Will v. Boler, 212 Minn. 525, 529, 4 N.W. 2d 345.

The Court is of the opinion, assuming all the evidence adduced by the plaintiff to be true, and drawing all inferences therefrom that are most favorable to the plaintiff, that the plaintiff has not established a cause of action, and that the damages claimed to have been sustained by the plaintiff are *damnum absque injuria*. The Court will grant the motion to dismiss the complaint.