## JOHN COLLINS v. CARL WICKLAND.

88 N. W. (2d) 83.

February 14, 1958—No. 37,174.

*Dygert & Riordan,* for appellant.

*V. J. Hermel* and *Harry H. Peterson,* for respondent.

MATSON, JUSTICE.

Appeal from that part of an order denying a new trial, which order was made pursuant to defendant's blended motion for amended findings and conclusions of law, or in the alternative for a new trial.

We are here concerned with the proper law applicable in an action brought by the plaintiff, as the owner of a city lot, against the defendant, as the owner of an adjoining lot, to recover damages caused by the flooding of plaintiff's basement. The flooding was alleged to have resulted from defendant's obstruction and inadequate diversion of a well-defined water channel extending across defendant's lot, which, in times of rain, was filled with water flowing on its way into Lake Minnetonka. In finding for plaintiff, the trial court applied the law governing the obstruction of natural watercourses. It is defendant's contention that no natural watercourse was involved and that the reasonable-use rule pertaining to surface waters should have been applied.

Since we are concerned with the nature of the drainage channel and the character of the waterflow therein, a more complete statement of

the facts is necessary. Taking the evidence in the light most favorable to the trial court's findings, it appears that plaintiff owns a parcel of land in a business block in the village of Spring Park, Minnesota. In a building thereon he operates a machine shop. Adjoining the northeast boundary of his tract is the property of the defendant. There are presently no buildings on defendant's land. Immediately south of both plaintiff's and defendant's property is Northern Avenue and adjacent, and running parallel, to Northern Avenue on its south side is the right-of-way of the Great Northern Railroad. Prior to the year 1950 when defendant improved his tract for use as a parking lot, the topography of the area was such that the land adjacent immediately to the north, east, and south of the tracts of both plaintiff and defendant was higher in elevation and sloped so as to cause draining waters from rainfalls and melting snow to collect and flow for a distance of several hundred feet in a fixed course from the south side of the railroad right-of-way through a culvert under Northern Avenue, and thence, around the back of plaintiff's building, across the most easterly part of his property, and thence across defendant's adjoining tract to its northern corner where it entered another culvert which drained into Lake Minnetonka. This latter culvert passed under County Highway No. 51 which passes along the northwest boundary of both plaintiff's and defendant's properties. Before the improvement of defendant's lot in 1950, the draining water followed the contour of the land and formed a drainway or channel on the land of both plaintiff and the defendant. This channel varied in width from a few inches to approximately three feet at its widest point and in places attained a maximum depth of not to exceed nine inches. Although such draining waters from rains or melting snows invariably flowed through this channel, the flow therein was not constant but was as irregular and occasional as the periodic rains.

Prior to 1950, defendant's tract was occupied by the basement ruins of a building which had burned down in 1930. In 1950, defendant filled in his property by dumping thereon a large quantity of dirt, after which he leveled the tract and used it as a parking lot. In so doing he eliminated the aforesaid water channel or drainway on his property and raised the surface of the tract several feet above the level of plaintiff's land, creating an earthwall along plaintiff's property. Prior

to the filling and leveling, defendant installed a 12-inch drainpipe or tiling which ran across his property and connected at the north corner of his tract with a culvert extending under County Highway No. 51 and draining into Lake Minnetonka.

Subsequent to the filling in of defendant's lot, the waters flowing under plaintiff's land did not drain off adequately, but instead backed up from defendant's property line and accumulated on plaintiff's land. On July 20, 1951, after a heavy rainfall, plaintiff's basement, which theretofore had been relatively dry, was flooded with 46 inches of water, causing considerable damage to the premises and to machinery, tools, equipment, and materials in the basement. For some time thereafter, whenever there was a heavy rainfall, plaintiff's basement was flooded with water of varying depths. In 1952, the village of Spring Park widened the roadway on Northern Avenue and replaced, with a 15-inch pipe, the 12-inch drainpipe or tiling which defendant had installed.

■ Plaintiff contends that the periodic flow of water across defendant's land in a definite channel constituted a natural watercourse, as found by the trial court, and that therefore the reasonable-use rule of surface waters has no application. What is a watercourse in the true or technical sense must be carefully distinguished from natural channels or drainways for the periodic or seasonal runoff of surface waters.[1] Although, according to many courts, the answer to the question of whether a water channel rises to the dignity of a true watercourse instead of being only a drainway for surface waters varies somewhat according to the importance of the channel because of the topography of the surrounding land or because it is located in an arid area,[2] watercourses and drainways differ in their physical characteristics.[3] In order to constitute a "natural watercourse" the flow ordi-

[1]It must be noted that they are treated separately in legal encyclopedias and other texts. See, e. g., 56 Am. Jur., Waters, §§ 6 and 73; Restatement, Torts, § 841, *illustration 3.*

[2]Compare *illustrations* 3 and 4 of Restatement, Torts, § 841; see McClure v. City of Red Wing, 28 Minn. 186, 9 N. W. 767, where the court found it unnecessary to determine the nature of a waterflow along a ravine in an area of high bluffs.

[3]Compare 56 Am. Jur., Waters, §§ 6 to 10, with § 76.

narily *must have some substantial permanency and continuity* and must be a part of a well-defined stream or body of water.[4]

The question of the right to obstruct a natural channel for draining surface waters has been needlessly complicated by the altogether too frequent tendency to assume that, once the running of surface water has over the years worn a visible channel, it automatically falls into the classification of a "watercourse" and is governed by the law which holds that a riparian owner has a natural right to have a natural stream flow unimpaired in both quality and quantity. Further confusion has resulted from the practice of many courts of using the terms "watercourse" or "natural watercourse" in dealing with mere drainways or drainage channels for surface water instead of restricting their use to true streams or ancient watercourses. A nondiscriminatory use or reliance upon classification labels results too easily in the individual case to a failure to discern with what meaning the label "watercourse" or "permanent watercourse" is used by a witness, court, or a textwriter, and leads to confusion and inaccuracy in determining the controlling facts and the applicable law. What law of liability governs the obstruction or diversion of a flow of water, however ancient, should not automatically turn upon the rigid classification of the flow as a natural watercourse without regard to the flow's physical characteristics in terms of volume,[5] topography,[6] or continuity.[7] This court, on more than one occasion, has declined to determine whether a flow of water should be classified or defined as a natural watercourse, but has instead, for the purpose of applying the rule of liability for injury resulting from its obstruction or diversion, considered more important the physical characteristics of the flow.[8]

---

[4]See, Enderson v. Kelehan, 226 Minn. 163, 167, 32 N. W. (2d) 286, 289, and cases therein cited; 56 Am. Jur., Waters, §§ 9 and 6; 93 C. J. S., Waters, § 4; Greenwood v. Evergreen Mines Co. 220 Minn. 296, 19 N. W. (2d) 726.

[5]See, McClure v. City of Red Wing, 28 Minn. 186, 9 N. W. 767.

[6]See, Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632.

[7]Restatement, Torts, § 841, *illustration 3.*

[8]See, Skinner v. G. N. Ry. Co. 129 Minn. 113, 151 N. W. 968; Jungblum v. Minneapolis, N. U. & S. W. R. Co. 70 Minn. 153, 72 N. W. 971; McClure v. City of Red Wing, *supra.*

 What we are concerned with here is the obstruction or diversion by the defendant of casual or draining surface waters from rains and melting snows which have followed or formed a natural depression in the contour of the land and which for several hundred feet have worn and flowed in a small natural channel. It is well established in this jurisdiction that surface waters consist of waters from rains, springs, or melting snow which lie or flow on the surface of the earth, but which do not form a part of a well-defined body of water or natural watercourse. Enderson v. Kelehan, 226 Minn. 163, 32 N. W. (2d) 286. The water which flowed across the property of the plaintiff and the defendant was of a character that does not rise to the dignity of a well-defined and distinct stream to which the law attaches rights and rules not applicable to waters caused by rainfall and melting snows.[9] The well-defined water channel across defendant's property was nothing more than a minor surface-water drainway, without any permanent source and having no utilitarian use—scenic or otherwise—other than that of providing a channel for the sporadic runoff of seasonal or occasional waters from rains or melting snows and as such did not constitute a watercourse. A variety of terms such as depression, swale, draw, drainway, ravine, ditch, etc., besides the misnomer, "watercourse," have been used by this court and others to describe the flow of surface waters in a well-defined channel or course.[10] Regardless of the terminology used, courts in other jurisdictions under similar circumstances have generally applied the rules relevant to surface waters.[11]

Our conclusion that we do not here have a true watercourse is in accord with Restatement, Torts, § 841, *illustration* 3:

"A depression in the soil in a non-arid part of the country contains flowing water only in times of heavy rainfall or melting snow. Water flows only for very short and irregular periods, and can be used for no practical purpose. Such depression is not a watercourse within the

---

[9]See, Drummond v. Franck, 252 Ala. 474, 41 So. (2d) 268, 272, 273; Shanan v. Brown, 179 Ala. 425, 434, 60 So. 891, 894, 43 L. R. A. (N. S.) 792.

[10]See, 56 Am. Jur., Waters, § 76; Annotation, 81 A. L. R. 262.

[11]See cases cited in 56 Am. Jur., Waters, § 75.

meaning of the term as used in the Restatement of this Subject (see § 846)."

■ In determining liability for the obstruction or diversion of minor natural and artificial drainways or channels for the drainage of waters this court has uniformly applied the law relating to surface waters.[12] Since Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, Minnesota has adhered to the reasonable-use rule.[13] Under this rule—

"* * * Each possessor [of land] is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable. The issue of reasonableness or unreasonableness is a question of fact to be determined in each case upon a consideration of all the relevant circumstances, including such factors as the amount of harm caused, the foreseeability of the harm on the part of the possessor making the alteration in the flow, the purpose or motive with which he acted, and others." Kinyon & McClure, *Interferences with Surface Waters*, 24 Minn. L. Rev. 891, 904.

■ No purpose will be served here in restating the basic factors

---

[12]See, Enderson v. Kelehan, 226 Minn. 163, 32 N. W. (2d) 286; Will v. Boler, 212 Minn. 525, 4 N. W. (2d) 345; Bush v. City of Rochester, 191 Minn. 591, 255 N. W. 256; Town of King v. Brekke, 151 Minn. 474, 187 N. W. 515; Skinner v. G. N. Ry. Co. 129 Minn. 113, 151 N. W. 968; Nye v. Kahlow, 98 Minn. 81, 107 N. W. 733; O'Neill v. City of St. Paul, 104 Minn. 491, 116 N. W. 1114; Jungblum v. Minneapolis, N. U. & S. W. R. Co. 70 Minn. 153, 72 N. W. 971; Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632; Brown v. Winona & S. W. Ry. Co. 53 Minn. 259, 55 N. W. 123; Jordan v. St. Paul, M. & M. Ry. Co. 42 Minn. 172, 43 N. W. 849, 6 L. R. A. 573; Rowe v. St. Paul, M. & M. Ry. Co. 41 Minn. 384, 43 N. W. 76; O'Brien v. City of St. Paul, 25 Minn. 331, 33 Am. R. 470.

[13]For an excellent discussion of the implications and history of the reasonable-use rule, and a comparison of that rule with the civil-law rule and the common-enemy rule of other jurisdictions, see Kinyon & McClure, *Interferences with Surface Waters*, 24 Minn. L. Rev. 891.

involved in an application of the rule since that has already been done in Enderson v. Kelehan, 226 Minn. 163, 167, 168, 32 N. W. (2d) 286, 289, and in cases cited therein. In that case we pointed out that (226 Minn. 168, 32 N. W. [2d] 289):

"The problems arising out of the disposal of surface waters involve an infinite variety of factors and circumstances, and therefore the reasonable-use rule cannot be reduced to a cut-and-dried formula, but must remain flexible, according to the full and normal implications of the term 'reasonable use,' to allow for a consideration of each individual case according to its own peculiar facts. No one factor or circumstance is controlling. What is reasonable use is a question of fact to be resolved according to the special circumstances of each particular case."

■ Any determination of whether a possessor has made a reasonable use of his land requires a consideration of the normal use and development of land in the immediate area or locality. What constitutes a reasonable use of land in an urban area is likely to differ from a reasonable use of land in a rural area. Common experience and knowledge have demonstrated that in order to prepare urban property for its customary use and enjoyment, it is frequently necessary to level, raise, lower, or otherwise alter the ground surface.[14] The reasonable use of an urban tract devoted to industrial development may differ from that of a tract reserved for residential purposes. It is not to be overlooked that it is common practice today for towns and cities to install, wherever needed, artificial drains and storm sewers which have a reasonable capacity for the effective diversion of urban surface water. Such factors should be taken into account in considering whether an obstructer or diverter of a drainway or drainage channel for surface waters has made a reasonable use of his tract.

Clearly, the evidence herein does not sustain the finding of a natural watercourse. The trial court, therefore, erred in applying the law governing natural watercourses instead of the reasonable-use rule for surface water. The evidence admitted upon the trial was not directed to the question of whether defendant's use of his property was a reason-

---

[14]See, 56 Am. Jur., Waters, § 78, and cases cited therein.

able one from a standpoint of an urban area. Since, in the interest of justice, there must be a new trial on all issues, it is unnecessary to consider other alleged errors.

The order of the trial court denying a new trial is reversed.

Reversed.