JOHN BLOCK and Others v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 31, 1907.

Nos. 15,171—(76).

**Diversion of Surface Water.**

Where a railroad company, in constructing its road, diverts surface water from its natural channel, it is a question of fact, under the circumstances, whether a new permanent outlet for the water should be provided. Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632.

**Same—Proximate Cause of Injury.**

In laying its railroad, appellant made a cut through a certain ridge of ground, thereby diverting surface water which had a natural outlet in another direction. Subsequent to the construction of the cut, and about a mile north thereof, a ditch was made by a private party, draining a large area of marshy land and thereby increasing the amount of water flowing through the railroad cut. It not being shown whether the damage to respondents' crop would have been occasioned by the diversion of water by

[1] Reported in 112 N. W. 66.

appellant, had the other ditch not been made, the evidence was not sufficient to prove that the acts of appellant in so diverting the water was the proximate cause of the injury.

Action in the district court for Polk county to recover $361 for damage to plaintiffs' crop caused by diverting surface water upon their land. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of the plaintiffs for $150. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and a new trial granted.

*M. L. Countryman,* for appellant.

*Charles Loring,* for respondents.

LEWIS, J.

The complaint charges that appellant railway company, in constructing its railway, carelessly, negligently and unnecessarily caused a continuous cut to be made through a certain sand ridge, which had the effect of diverting the surface water accumulated in a slough east of the ridge, called "Three Man Lake," from its natural southerly outlet, through the cut in a westerly direction, thence taking its own course, flooding respondents' property, and damaging their crop. The evidence shows that the country in that vicinity was generally level, interspersed with ridges, sloughs, and swales or water ways; that the sloughs or marshes absorbed considerable water; and that in rainy seasons the surplus ran off through natural channels, finally reaching the Red river.

1. The court instructed the jury that surface water is a common enemy; that appellant had the right to make its grade and ditches through the sand ridge; that, if there was a natural drain within a reasonable distance into which the surface water thus diverted through the sand ridge could have been reasonably drained by the construction of ditches along the right of way, and so prevented injury to respondents, then it was the duty of appellant so to do. Upon this point we think the trial court was correct.

According to the evidence, the surface of the land from the cut sloped gradually westerly along the tracks for a distance of about two and a half miles where it crossed a coulee, or water way, which had a permanent outlet in a westerly direction. While the distance is consid-

erable, the slope is gradual, and there appear to be no obstructions, and a ditch or ditches of not more than two or three feet in depth would have taken care of the water, and in our judgment it was for the jury to say whether appellant acted reasonably in diverting and turning the water loose without providing an outlet for it. The evidence is conclusive that appellant made no effort to construct any ditches, or to provide an outlet for such water. The farmers in the district purchased their lands with reference to natural conditions, and it is a wholesome rule which requires one who interferes with natural watercourses to provide proper outlets, if that can be reasonably done. Whether the course adopted by appellant was reasonable under the doctrine of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, was a question of fact.

2. The sand cut in question was made at the time the railroad was built in 1898. In 1901 a ditch, known as "Hanson's Ditch," was built by a private party, and was about seven hundred feet long, thereby draining many acres of marshy and slough lands lying to the east through a certain ridge and delivering it into Three Man Lake. It was shown that a good deal of water passed through this ditch in 1906, and a witness called by appellant stated that in May, 1906, three cubic feet of water per minute was discharged from it into Three Man Lake, whereas at the same time two and a half cubic feet of water per minute was running out through the cut. It was shown that 1905 and 1906 were known as very wet seasons, and that at the time of the alleged damage to respondents' crop in July, 1905, there had been an unusually rainy period, and that the entire country was water-soaked. Several witnesses testified on behalf of respondents that they traced the flow of water from respondents' land to the cut, and found quite a stream coming through it. There was no effort on the part of respondents to show that the water which reached their premises was not the water drained into Three Man Lake by Hanson's ditch. In other words, there was no proof that any damage would have resulted to their premises by reason of the acts of appellant in making the cut, if Hanson's ditch had not been constructed.

The court instructed the jury that appellant was not liable for any injury to respondents by reason of the Hanson ditch, and "if you should conclude from the evidence in the case that the plaintiffs would not

have suffered any damage to their crops as stated in the complaint, had it not been for the construction of the Hanson ditch, then your verdict should be for the defendant; but if you should find that, if there had been no Hanson ditch at all, there would have been damage in the year 1905 to the crops of plaintiffs, then consider the matter under the further rules which I will give you. * * * Has the plaintiff established by a preponderance of the evidence in the case that, if Hanson's ditch had not been constructed at all, he would have been damaged in the year 1905 by having his crops destroyed? * * *"

The jury assessed appellant $150 damages, but we are unable to discover upon what evidence the conclusion was based. For all that appears, Three Man Lake and the general country west of the railroad cut would have absorbed all the water diverted through the cut, had Hanson's ditch been closed up. Appellant was not charged with the damage resulting from all the water discharged through that ditch, simply because it made the cut. The court correctly instructed the jury on that point. It is unfortunate, but apparently inevitable, that in wet periods some must suffer by reason of surplus water until permanent drainage systems are provided. However, verdicts must be based upon something more than mere speculation. Under the circumstances, the trial court was justified in denying appellant's motion for judgment notwithstanding the verdict; but the evidence is too indefinite to support the verdict, and a new trial must be granted upon that ground.

So ordered.