CHARLES HOWARD and Another v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

April 21, 1911.

Nos. 16,728—(27).

**Railway's liability for diversion of surface water.**

Action to recover damages to the plaintiffs' land by reason of the alleged negligent construction and maintenance of defendant's railway roadbed, whereby surface waters were cast in destructive quantities upon their land. *Held:*

1. The liability of a railroad company for a diversion of surface waters is the same as that of individuals, and the acquisition of its right of way by condemnation proceedings does not release it from damages resulting from the negligent construction and maintenance of its roadbed.

[1] Reported in 130 N. W. 946.

2. A landowner has a right to drain his land for any legitimate purpose; but if he collects and conveys surface waters off his own land, he must use all reasonable means to avoid unnecessary injury to the land of others.

3. The trial court did not err in denying defendant's motion for judgment, or in granting plaintiffs' motion for a new trial.

Action in the district court for Mower county to recover $2,000 damages for the flooding of certain lands for a period of six years, through defendant's alleged negligence in building and maintaining an embankment, and collecting surface water in ditches and burrow holes along its right of way. The answer denied negligence on its part either in the construction or maintenance of its roadbed or embankment; alleged that its railroad was built in a careful manner and that the construction was the usual one followed by railroads; that plaintiffs sustained no damages save such as were incident to the original rights conveyed to the railroad company in the condemnation proceedings, by which the right of way was first acquired, and pleaded in defense the judgment of $1,600 in favor of plaintiffs which was rendered in the condemnation proceedings in the district court for that county. The reply was a general denial. The case was tried before Kingsley, J., and a jury which returned a verdict in favor of plaintiffs for one dollar. The subsequent proceedings are stated in the opinion. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Catherwood & Nicholsen* and *Maurice O'Connor,* for appellant.
*French & Sasse* and *Dunn & Carlson,* for respondent.

START, C. J.

The plaintiffs are, and during all the times hereinafter stated were, the owners of a farm of three hundred twenty acres in the township of Lyle, this state. A public highway running east and west divides the land; there being one hundred sixty acres north of the highway and a like quantity on the south of it. The defendant's railroad crosses a natural watercourse, about three rods wide, known as Woodbury creek, upon a trestle at a point some one hundred twenty rods east of the plaintiff's land, thence runs westerly on and over

their south quarter section; and after leaving this quarter it bears to the northwest, and crosses a highway at a point where there was a culvert in the highway before the railroad was built. The plaintiffs brought this action in the district court of the county of Mower to recover from the defendant the damages sustained, as alleged in the complaint, by the negligent construction and maintenance of the roadbed, whereby natural watercourses were obstructed and large quantitites of surface waters were collected, by means of ditches without any outlet, and discharged in destructive quantities upon their land. The answer denied the allegations of the complaint as to the negligent construction and maintenance of its roadbed, and alleged that the construction and operation of its roadbed and ditches are conditions necessarily incident to the operation of its railway, for which the defendant made full compensation when it acquired the right by condemnation proceedings to construct and operate its railroad over the plaintiffs' land.

The issues were tried to a jury, and at the close of the evidence the defendant moved the court for a directed verdict, which was denied, case submitted to the jury, and a verdict returned for one dollar for the plaintiffs. Thereupon they gave notice of a motion for a new trial, to be heard on the minutes of the court on February 16, 1910, and the defendant gave notice of a motion for judgment in its favor notwithstanding the verdict, to be heard on the minutes of the court at the same time and place that the plaintiffs' motion was noticed for hearing. The defendant's motion did not assign any specific alleged errors. The court heard both motions at the same time. No objection to hearing the defendant's motion on the notice given was made by any one, and on February 25, 1910, the court made its order denying the defendant's motion for judgment and granting plaintiffs' motion for a new trial. The defendant appealed to this court from the whole order on March 22. Thereafter, and on April 20, the defendant gave notice of a blended motion for judgment in its favor notwithstanding the verdict or for a new trial, to be heard upon a settled case on May 2. No objection was made by any one to the hearing of the second motion. The court heard the motion and made its order denying it, from which the defendant appealed.

Counsel for plaintiffs urge that the defendant's first motion for, judgment was rightly denied, no matter what its merits were, because it did not specify the ground upon which it was made, and that the correctness of the order cannot be here considered, and, further, that the first motion is a bar to the second one for judgment.

It is apparent from the record that the first motion for judgment, and the plaintiffs' motion for a new trial, were each considered and denied on the merits. Therefore the correctness, on its merits, of the first order appealed from, is the only question presented by the record, for the reason that the subject-matter of the defendant's second appeal was disposed of in the district court by the first order of the court and the appeal therefrom.

This brings us to a consideration of the merits of the order denying the defendant's motion for judgment, and granting a new trial on plaintiffs' motion. There was no evidence which would sustain a finding that the defendant obstructed any natural watercourse, within the strict meaning of the term. The question, then, is whether the defendant was, upon the whole evidence, entitled to a directed verdict. The solution depends upon whether the evidence was sufficient to take the case to the jury on the question of the defendant's alleged negligence in constructing and maintaining its roadbed, so as to collect the surface waters, and discharge them in destructive quantities upon the land of the plaintiffs to their damage. The liability of a railroad company for a diversion of surface waters is governed by the same principles as that of individuals. The acquisition of a right of way by a railway company by condemnation proceedings does not release it from damages which result from its negligent construction and maintenance of its roadbed. Jungblum v. Minneapolis, N. U. & S. W. R. Co., 70 Minn. 153, 72 N. W. 971.

The question whether a railroad bed, with reference to surface waters, is, in any particular case, negligently constructed and maintained, depends upon the rights and duties of a landowner as to such waters. There is some conflict, real or apparent, in our own decisions, but the rule is now definitely settled that a landowner has a right to drain his land for any legitimate purpose; but, if he collects and conveys surface waters off his own land, he must use all

reasonable means to avoid unnecessary injury to the land of others. Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L.R.A. 632; Jungblum v. Minneapolis, N. U. & S. W. R. Co., supra; Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123; Fossum v. Chicago, M. & St. P. Ry. Co., 80 Minn. 9, 82 N. W. 979; Nye v. Kahlow, 98 Minn. 81, 107 N. W. 733; Block v. Great Northern Ry. Co., 101 Minn. 183, 112 N. W. 66.

The case of Brown v. Winona & S. W. Ry. Co., 53 Minn. 259, 55 N. W. 123, 39 Am. St. 603, relied on by the defendant, when tested by the facts assumed in the opinion in that case, would seem to be in harmony with the rule we have stated, but, if it be otherwise, the case is necessarily modified by the subsequent cases we have cited. If a landowner, in collecting and conveying surface waters off his own land, fails to discharge the duty imposed upon him by the rule stated, he is guilty of negligence, which, in this connection, is the failure to discharge a legal duty.

The ultimate question on this appeal is whether there was any evidence given on the trial fairly tending to show that the defendant was thus negligent. There was evidence tending to show that the general surface of the plaintiffs' land, and the land to the west and northwest of it, was flat prairie, having little natural drainage. But before the defendant's roadbed was built there was a natural depression, but not sufficient to constitute a natural watercourse, in the land northwest of the plaintiffs' land, at the point where the highway culvert was placed, through which surface water was discharged; that before the building of the roadbed the balance of the surface waters either found their way to Woodbury creek or were diffused over the plaintiffs' land, doing it no substantial injury; that in the construction of its roadbed across the highway the defendant filled up the culvert and made a solid roadbed across the highway; that the roadbed as constructed and maintained from the culvert to the east line of plaintiffs' land is of the average height of three feet, with continuous ditches or burrow pits on each side, the one on the south side ending near the east line of plaintiffs' land, without any outlet; that the south ditch could have been extended so as to discharge its waters into Woodbury creek at a cost of $180,

but in doing so it would have been necessary to have cut through an elevation in the land some fifteen rods long, over which the ditch would have to be approximately six feet deep; and, further, that by reason of filling the culvert and leaving the ditch on the south side of the roadbed without any outlet the surface waters are collected therein to such an extent that they overflow and are discharged in destructive quantities upon the plaintiffs' south quarter, to their damage in some amount.

There was a sharp conflict in the evidence as to many of these matters; but, as we are bound to do, in considering whether the defendant was entitled to a directed verdict, we have taken the most favorable view, for the plaintiffs, of the evidence permissible without regard to the preponderance of the evidence. As there must be a new trial of the action, we refrain from discussing the evidence, or referring to it in detail. The result of our consideration of the whole of the evidence is that it was sufficient to take to the jury the question whether the defendant was negligent in the construction and maintenance of its roadbed, which resulted in injury to the plaintiffs' land.

This brings us to the question whether the trial court erred in granting plaintiffs' motion for a new trial. In its general charge, the court instructed the jury, in effect, that if the defendant, since building its road, had negligently done anything whereby the plaintiffs had sustained injury, they would be entitled to recover. Upon the court's attention being called to this instruction at the close of the general charge, it said: "I will say to the jury that there is no evidence in the case that there has been anything done by the railroad company to the injury of the plaintiffs, except at the time of the construction of its roadbed." The court granted a new trial, upon the ground that the instructions were confusing and misleading. In doing so, it did not err. The first instruction might well have been understood by the jury as limiting the plaintiffs' damages to acts done by it since the construction of its roadbed, thus excluding by implication any claim for damages sustained by the alleged negligence of the defendant in constructing its roadbed. The attempted explanation, by giving the second instruction, did not relieve the

situation; on the contrary, it was calculated further to confuse the jury.

Order affirmed.