THOMAS B. C. EVANS v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

January 26, 1912.

Nos. 17,391—(205).

**Railroad right of way — cases followed.**

　　The facts in this case are substantially like those presented in McCarthy v. St. Paul, M. & M. Ry. Co. 31 Minn. 278, and Radke v. Minneapolis & St. Louis Ry. Co. 41 Minn. 350, wherein it was held that the conveyance of a railroad right of way after the construction of the roadbed was in effect a grant and license to maintain the roadbed as then existing, and the decisions there rendered are followed and applied.

**Same — parol evidence inadmissible to vary terms of conveyance.**

　　An alleged contemporaneous verbal agreement on the part of the railroad company, at the time of the execution and delivery of such conveyance, to reconstruct its roadbed so as to restore to its natural condition a stream of water thereby obstructed, *held* inadmissible, as varying the terms of the written contract.

[1]Reported in 134 N. W. 294.

Action in the district court for Clay county to recover $1,500 for the alleged wrongful obstruction of Buffalo river by defendant's embankment and for failing to place suitable culverts for the purpose of draining surface water from plaintiff's land. The amended answer denied any knowledge as to plaintiff's possession of any portion of the premises described in the complaint, but alleged that defendant owned two strips of land across them; one being two hundred feet wide and the other four hundred feet wide, which was formerly occupied by defendant's main line but now used by a spur track; that the two hundred foot strip was by warranty deed on or about July 22, 1907, conveyed to defendant by plaintiff, the consideration named in the deed being $880; that prior to the delivery of the deed an embankment had been constructed which diverted the water of Buffalo river from its previous channel. The reply was a general denial. The action was tried before Taylor, J., who, at the close of the trial, directed a verdict in favor of defendant. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Charles S. Marden* and *W. B. Douglas,* for appellant.

*C. W. Bunn* and *George Hoke,* for respondent

BROWN, J.

Plaintiff was the owner of the northwest quarter of section 12, in township 139, of range 46, in Clay county, which adjoined a tract of four hundred eighty acres owned by his father, and the whole was used and occupied as one farm. Buffalo river, a small stream, flowed from a southeasterly direction toward the northwest, passing over the land immediately south of plaintiff's tract, which was owned by his father, crossing the south line of plaintiff's land some distance from the southeast corner thereof running thence on a curve or bend in a westerly direction about five hundred feet, when it turned south and recrossed plaintiff's said south line, so that the river flowed for this short distance in the form of a bend or loop through plaintiff's land, and served as a watering place for his stock. For many years prior to 1906, defendant's line of railroad extended across plaintiff's said land in a northwesterly direction, but some distance north of the arm or bend of the river mentioned. During that year the company,

for the purposes of straightening its line and avoiding certain grades, changed the line to a point a considerable distance south of the old line. As so changed the line ran just south of the river as located upon plaintiff's land, and the grade thereof cut through the arm thereof, diverting the flow of water therefrom. A trench was constructed from the stream as it flowed north to the stream as it immediately to the west flowed south, leaving the loop or arm wholly disconnected, but returning the water to the bed of the river at the point intersected by the trench, all upon the right of way. In April, 1907, the new road embankment was approximately eighteen feet high and forty feet wide, and completely obstructed the flow of water to the north, where it had formerly flowed.

In the meantime condemnation proceedings were commenced for the purpose of acquiring the right of way at the new location, and the assessment of damages therefor. At a hearing in these proceedings, had before the district court of Clay county, a compromise and settlement of the rights of the parties was reached, by which, and as as a result of which, plaintiff conveyed to the company a strip of land over and across his farm, and the company agreed to and did pay him therefor the sum of $880, upon which payment plaintiff signed and delivered to defendant a voucher or release, by which he acknowledged the receipt of the money as and for "all damages by reason of the location, construction, and operation of said railway across" his land. The deed was the usual short form of warranty deed. At the time of the execution of the deed and the receipt of the consideration the roadbed had been fully constructed and then existed as heretofore stated, and plaintiff then well knew and understood that the construction thereof diverted the flow of the water of the river from his land. The deed was so executed and receipt given in completion of the settlement, in July, 1907.

Plaintiff brought his action in April, 1911, claiming damages (1) for the alleged wrongful and unlawful obstruction of the river by the railroad embankment; and (2) damages for the failure of defendant to place in its roadbed suitable culverts to drain the surface water from plaintiff's land.

On the trial below it was claimed by plaintiff that at the time of

the compromise and settlement and the execution of the right of way deed defendant verbally agreed, as a part of the consideration for the deed, by constructing a proper culvert in the embankment, to restore the flow of water to the original channel and through plaintiff's land. Evidence tending to show this verbal agreement was excluded, as contradicting and impeaching the written contract as evidenced by the deed and written receipt. The court at the conclusion of the trial directed a verdict for defendant, and plaintiff appealed from an order denying his motion for a new trial.

The assignments of error present two questions: (1) Whether the court below erred in holding that the compromise and settlement, culminating in the right of way deed and payment of damages, operated as a grant and a license to maintain the road and embankment as then existing over and across the river, completely obstructing the same; and (2) whether the court erred in excluding the evidence offered by plaintiff tending to show an agreement by defendant, entered into at the time the deed was executed and as a part of that transaction, to construct a culvert in its roadbed at the river and restore the flow of water upon plaintiff's land.

1. A full consideration of the first question, and the argument of counsel for plaintiff in support of the contention that the trial court erred in resolving it against plaintiff, leads to the conclusion that the cases of McCarthy v. St. Paul, M. & M. Ry. Co. 31 Minn. 278, 17 N. W. 616, and Radke v. Minneapolis & St. Louis Ry. Co. 41 Minn. 350, 43 N. W. 6, are controlling and sustain the view and ruling of the trial court.

In the McCarthy case it appeared that the railroad company had entered upon the premises of a landowner, and located its line thereon, and had graded its roadbed over and across the same in such manner as to obstruct the natural flow of water therefrom, without having first acquired the right by condemnation proceedings or otherwise. It subsequently constructed its road upon this embankment and roadbed, and for several years operated its trains thereon. Thereafter, in negotiations for a settlement with the landowner, the company purchased of him the land so taken, and he, for a consideration agreed upon, conveyed the same by warranty deed to the company. It was

held that the effect of the deed was a grant of the land and a license to maintain the road and embankment as then constructed and existing. The decision there rendered was followed and applied in the Radke case, upon substantially the same facts. We are unable, from the standpoint of substance, to distinguish the case at bar from those cited.

Nor can we concur with counsel in the contention that the doctrine of those cases is not only harsh, but unsound on principle. The decisions have stood the test for many years, have been cited with approval by other courts (2 Notes to Minn. Cases, 504), and in this state have become a rule of property, and should not be disturbed.

The fact that the embankments involved in these cases affected the natural drainage, and did not, as in the case at bar, obstruct the flow of water of a natural stream, is not a differentiating circumstance. Nor is the rule of the McCarthy case any the less applicable because of the fact that the actual obstruction of the stream by the roadbed was upon the adjoining land. It was within one hundred feet of plaintiff's south line, actually and completely shut off the stream from the time of its construction, and plaintiff was fully informed of the situation when he entered into the settlement. In short, with the railroad embankment constructed, the flow of water thereby obstructed, the obstruction being within a very short distance of plaintiff's land, upon land used in connection with his farm, the settlement was effected, the deed given, the consideration paid, and the release signed. In the light of this situation, we find no sound reason for distinguishing the case from the former decisions.

The case of Jungblum v. Minneapolis, N. U. & S. W. Ry. Co. 70 Minn. 153, 72 N. W. 971, for reasons stated in that opinion, is clearly distinguishable. In that case the railroad embankment had not been constructed when the deed was given. In the case at bar it had. And the situation was open and within the contemplation of the contracting parties in entering into the settlement.

2. The further contention that the trial court erred in excluding evidence offered by plaintiff to show the alleged parol agreement to restore the channel of the stream does not require extended discussion.

We are clear that the trial court correctly excluded the evidence. To have received it would not only have varied the terms of the written contract, but in fact have destroyed the legal effect of the settlement as evidenced by the deed and release. The alleged agreement was entered into, if at all, at the time of the settlement, and as a part of that transaction, and should have been embodied in the written contract. Bruns v. Schreiber, 43 Minn. 468, 471, 45 N. W. 861.

The facts do not bring the case within Jordan v. White, 20 Minn. 77 (91), cited and relied upon by plaintiff. The agreement there shown and held admissible had reference to the money consideration agreed to be paid for the property, and not to an independent agreement on the part of the grantee to do some act beneficial to the grantor. The special agreement to reconstruct the roadbed and restore the channel of the stream comes within the rule stated in Kramer v. Gardner, 104 Minn. 370, 116 N. W. 925, 22 L.R.A.(N.S.) 492, and was properly excluded. See also cases cited in that opinion.

For the reasons stated, our conclusions are in harmony with those of the learned trial court, and the order appealed from is affirmed.

PHILIP E. BROWN, J., being absent on account of illness, took no part.