# JOHN O. PETERSON v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

## February 4, 1916.

## Nos. 19,596—(232).

**Surface water — closing of ditch unlawful.**

1. A ditch,. dug along a railroad right of way and maintained for a long period by the railroad company to carry away surface waters which are prevented from passing in the direction of the natural course of drainage by the railroad roadbed constructed upon a fill without culverts, cannot be closed by the company, the defendant, when it results in flooding the lands of plaintiff, bought and improved while the ditch existed and took care of all the surface waters intercepted by the fill— such closing being an unreasonable and negligent use of defendant's property to the needless injury of plaintiff's.

**Same—statute applies.**

2. The ditch, having been voluntarily constructed by the railway company for the drainage of its right of way and roadbed, and being in existence for that purpose when chapter 377, Laws 1909, was enacted, must now be kept open as therein provided.

**Police power.**

3. Said chapter is not an unreasonable exercise of the police power of the state.

**Admission of evidence—charge to jury.**

4. No error in rulings upon the reception of testimony requires a reversal, nor does prejudicial error appear in the instructions to the jury.

Action in the district court for Chisago county to recover $2,500 for filling up a ditch on defendant's right of way, by reason of which plaintiff's premises were covered with water and his crops and pastures submerged during the years 1912, 1913 and 1914, and for a perpetual injunction restraining defendant from damming up waters on its right of way and on plaintiff's premises. The case was tried before Stolberg, J., and a jury which returned affirmative answers to the questions (1) whether the natural drainage of plaintiff's. low land was over the lands occupied by plaintiff's roadbed; (2) whether defendant's roadbed was

[1] Reported in 156 N. W. 121.

constructed in such manner as to constitute in the absence of culverts a barrier to waters flowing in their natural course across defendant's right of way, and (3) whether the filling up of the ditch on defendant's right of way caused water to become impounded on plaintiff's land, and assessed plaintiff's damages at $586.81. The court made findings and ordered judgment in favor of plaintiff for the amount of the verdict and granted a perpetual injunction. Defendant's motion for amended findings was granted in two particulars and denied in others. Defendant's motion to set aside the special verdict and grant judgment in favor of defendant or for a new trial, was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*C. W. Bunn* and *D. F. Lyons,* for appellant.

*Alfred P. Stolberg* and *C. S. Williams,* for respondent.

HOLT, J.

In 1869 a railroad was constructed through a forty, now owned by plaintiff, in Chisago county, this state, apparently, without taking the trouble to acquire the right so to do, for condemnation proceedings were not instituted until 1874, and not until 1885 were the damages awarded paid into court. In 1895 defendant's predecessor, then the owner of the railroad, constructed a ditch on the westerly side of the right of way as it passes through plaintiff's land. This ditch served to carry the water south where it found either a natural or artificial outlet. Plaintiff in 1911 acquired this forty together with the forty adjoining on the west. And, for about ten years prior thereto, he had owned and resided upon the government forty immediately west of the one last referred to. The greater part of these three forties is low. Apparently plaintiff's land, as well as the surrounding country, consisted for the most part of low land and tamarack swamps. The railroad track was of necessity, in that vicinity, placed on a fill. The natural drainage was across the right of way towards the east or southeast. The slope was slight, but the effect of the construction of the roadway without any culverts therein was to impound the waters on the west of the right of way, except such as by slow seepage might pass through the embankment. Years ago a ditch was constructed by the railroad far to the east of its right of way, evidently to get rid of the surplus waters on that side of the track. The

county has also undertaken to drain these low lands. A county ditch starts some distance west of plaintiff's land and runs about 80 rods south of his southerly line until the railroad right of way is reached; then it turns south and runs on the westerly side of the right of way for half a mile; then crosses the right of way running easterly. The ditch, constructed by the railroad in 1895, apparently conveyed the water, impounded by the embankment, south into this county ditch. For about 15 years the railroad maintained the ditch it had constructed, but in 1910 it undertook to widen its roadbed and then filled in the ditch. The lay of the land is such that, when the railroad filled in its ditch, the waters could not escape to the south, nor to the east because of the lack of culverts in the roadbed, and the result has been plaintiff's low land west of the track, which had become so well drained of surplus surface water that a large part had been cleared and seeded to tame grasses and was in a fair way of becoming valuable meadow, has now reverted to a wet marsh where only worthless wire grass can grow. Plaintiff by this action seeks relief from the flooding of his lands and also damages for the injury suffered since the defendant filled in its ditch. The case was tried to the court, but special issues were submitted to a jury, which found that the natural drainage of plaintiff's low lands and meadows is in an easterly and southeasterly direction over lands occupied by defendant's roadbed; that such roadbed is constructed in such manner as to constitute in the absence of culverts a barrier to waters flowing in their natural course of drainage over and across defendant's right of way; that the filling up of the ditch on defendant's right of way on the west side of its roadbed caused water to become impounded on plaintiff's land, and that plaintiff suffered damages therefrom in the sum of $586.81.

Defendant insists that, since its roadbed, consisting of an embankment without culverts and without this ditch, existed at the time the condemnation proceeding was instituted, all injuries or damages resulting from the construction were paid for in the award, citing McCarty v. St. Paul, M. & M. Ry. Co. 31 Minn. 278, 17 N. W. 616; Radke v. Minneapolis & St. Louis Ry. Co. 41 Minn. 350, 43 N. W. 6, and Evans v. Northern Pacific Ry. Co. 117 Minn. 4, 134 N. W. 294. Plaintiff concedes this would be true in case of a voluntary conveyance by the owner of a right of way, but claims that, where land is taken for railroad purposes under

the right of eminent domain, there is always an implied duty on the part of the railroad to so construct and maintain its road that adjacent proprietors suffer no unnecessary damage. When the railroad is constructed before the condemnation proceeding is instituted, it is not easy to find a plausible reason for saying that the award of damages is not based upon all the injury resulting from the railroad as located and constructed, the same as if a deed were given under the same circumstances. Whether the right of way was acquired by purchase or by condemnation the defendant has the undoubted right to make reasonable use of the same for railway purposes, provided in so doing it exercises reasonable regard for the rights of adjoining owners. Skinner v. Great Northern Ry. Co. 129 Minn. 113, 151 N. W. 968; Howard v. Illinois Central R. Co. 114 Minn. 189, 130 N. W. 946, and 116 Minn. 256, 133 N. W. 557.

But there are considerations going far to sustain plaintiff's right to the relief awarded by the court, notwithstanding the decisions first cited. Damages awarded in condemnation proceedings do not include injuries resulting to adjacent property from improper construction or negligent maintenance of the roadbed. The theory is that a railroad will be constructed and operated in a proper manner and so as not to inflict unnecessary injury upon the inhabitants of the districts contiguous to its line. Jungblum v. Minneapolis N. U. & S. W. R. Co. 70 Minn. 153, 72 N. W. 971. Of necessity a railway roadbed cannot so conform to the contour of the territory through which it passes that it will not interfere with surface waters or the natural drainage. Where there are lowlands, the track must be upon an embankment, and where there are ridges or hills, cuts must be made. In proper railroad construction consideration must be given to adequate culverts and ditches along the track, so that no unreasonable interference with either watercourses or natural drainage of surface waters occurs. This is required in the interest of the railroad, the traveling public, and the country contiguous to the line of railway. It stands to reason that as the country develops the railroads must also keep pace. What might have been a reasonable and non-negligent construction of a railway roadbed through the low ground and tamarack swamps of the north part of Chisago county in 1869 when large stretches were a comparative wilderness, should not now be so regarded, when the state, county and individual owner are putting forth earnest effort to

drain and reclaim vast areas of worthless bogs into very valuable and productive land.

The doctrine of McCarty v. St. Paul, M. & M. Ry. Co. supra, should not be applied with rigor to this condemnation proceeding of 1874, under the facts here revealed. The land was evidently deemed so worthless that the railroad company did not take the trouble to ask leave of the owner to pass through until five years after the road was built. There is no indication that any of this land, nor of contiguous lands, was then occupied or made use of. Whether railroad embankments at that time impounded more water than would otherwise exist in a tamarack swamp was of no consequence. No owner seems to have appeared, or to have known of the condemnation, and neither did the railway company interest itself very much in finding him, for the award, whatever it was, was paid into court; and that was not done until 1885.

We also find that the railroad corporation itself recognized that the original construction and the one existing in 1874 was not what it ought to be, for in 1895 it constructed this ditch, the closing of which more than 15 years later caused the injuries complained of. It knew that its embankment across the east forty of plaintiff's land interfered with the natural drainage to the east. It may be at first, when the embankment was neither so high nor so wide as later and, perhaps, not so firmly settled and hardened, that there was a seepage through, notwithstanding the absence of culverts. At any rate, to relieve the accumulation of waters on the west side of the embankment this ditch was dug on the west side of the right of way and the water found an outlet to the south. It became almost like a natural watercourse, and must have connected with one, for witnesses testify to spearing fish in the ditch. In fact, it appears that defendant's predecessor considered that reasonable care in the construction of the roadbed through plaintiff's land required this ditch; and it should not be closed now, unless defendant by means of adequate culverts lets the water through its embankment toward the east, the direction of natural drainage.

Another consideration shows equities with plaintiff. About 1900 he purchased the west forty and began to improve the same for a home. Some of this was low land, susceptible of being utilized because this ditch, which was then in existence, carried off the waters impounded by the

roadbed. After living there some eight or nine years and observing that the railroad maintained its roadbed and right of way so that it did not interfere with the passage of surface water, he made arrangements for improving and purchasing the balance of the farm now owned by him. He had a right to act on the assumption that the railroad company would not make any change in its roadbed that would result in impounding, upon his land, waters that had theretofore been allowed to drain to the east. Especially had he no reason to anticipate a filling in of the ditch that carried away the waters that ought to have been let through the embankment. Even now the railroad engineers admit that a ditch like the one closed would better the roadbed, and there is no intimation that it would be a burden upon defendant to have one there, or to have suffered the one it dug to have remained by merely shifting it a little to the west, so as to permit a widening of the roadbed.

As to the tract bought in 1900 by plaintiff and the government forty next east, bought some nine years later, neither of which touches defendant's right of way, it is reasonably clear that the court was right in allowing relief and damages for impounding thereon surface water which should have been allowed to pass through defendant's roadbed to the east. There is nothing which precludes plaintiff from insisting that defendant shall so maintain its roadbed with culverts and ditches as not to unreasonably detain upon those tracts surface water which naturally would pass by without injury, for the court's findings are that the condemnation proceeding related to the east forty only of the land now owned by plaintiff. That finding is not challenged, although it is stated that the stipulation of facts in regard to the condemnation was broad enough for the court to have included the whole of plaintiff's farm, the three forties. Doubtless the court's finding reflects the true situation more accurately than the stipulation. In ridding itself of surface water or in creating a barrier by its roadbed defendant "must give reasonable regard to the rights of other landowners, using its own so as not to interfere unreasonably with the rights of others." Skinner v. Great Northern Ry. Co. 129 Minn. 113, 151 N. W. 968. But since part of the east forty west of the right of way was lowland and some damages for its flooding were included in the amount awarded, it remains to be seem whether that may be justified. We think the observations already made concerning the

situation, the voluntary abatement by the railroad of the interrupted drainage by means of the ditch; its maintenance for such a long time; the purchase and improvement of the contiguous lands by plaintiff under the then existing conditions; the needless and unreasonable closing of the ditch by defendant, make inapplicable the rule of McCarty v. St. Paul, M. & M. Ry. Co. supra, and call for the application of the one stated in Skinner v. Great Northern Ry. Co. supra; Brown v. Winona & S. W. Ry. Co. 53 Minn. 259, 55 N. W. 123, 39 Am. St. 603; Burnett v. Great Northern Ry. Co. 76 Minn. 461, 79 N. W. 523, and Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L.R.A. 632. Defendant's unreasonable and negligent use of its property has caused needless injury to plaintiff's.

But there is another consideration supporting plaintiff's right to be compensated for the damage to the east forty as well as to the other lands due to the closing of the ditch. The ditch was in existence for the drainage of defendant's roadbed when chapter 377, p. 453, Laws 1909, was enacted (section 4269, G. S. 1913). This law provides: "It shall be the duty of every railroad company or receiver or lessee thereof, operating a line of railroad in the state of Minnesota, to keep clean at all times between the first day of April and the first day of November of each year, all ditches and culverts constructed by them for the drainage of their roadbed or right of way." It seems clear that this statute was passed to protect against just such injuries to agricultural lands as was inflicted by the closing of this ditch. Its primary object was not to insure a safe roadbed, for the dates specified for keeping the ditch and culverts open indicate protection to fields and meadows. But conceding that the aim was both to secure a safe roadbed, and to protect private property against injury from water, we think the law was well within the power of the legislature to enact, and that plaintiff can invoke a remedy based thereon. It is but another mode of the same proper supervision found in the fence-and-cattle-guard law, and the law requiring railroads to keep their right of way free from combustibles. The person specially injured by a failure to comply with such statutes is entitled to redress. In Minneapolis & St. L. Ry. Co. v. Emmons, 149 U. S. 364, 13 Sup. Ct. 870, 37 L. ed. 769, in which the constitutionality of the fence law was attacked, this observation was made: "The extent of the obligations and duties required of railway corporations or companies by their charters does not create any

limitation upon the state against imposing all such further duties as may be deemed essential or important for the safety of the public, the security of passengers and employees, or the protection of the property of adjoining owners." This statute does not require the railway company to construct any ditches or culverts for the benefit of adjacent property, but does require those that have been voluntarily constructed by it, for the drainage of its roadbed, to be kept open. For 15 years defendant deemed this ditch essential for the proper drainage of its roadbed, and even now its engineers concede it of benefit. Surely it is not an unreasonable requirement, nor an invasion of the railroad's property rights to now require a maintenance of this ditch or something equivalent which will. abate the injurious collection of waters resulting from its being filled up.

Some objection is made to the evidence relating to damages, but we think no substantial error is here shown. The so-called permanent damage was the destruction of the tame grass sod and the other damage consisted of the reduced rental value of the farm during 1912, 1913 and 1914, resulting from the filling of the ditch. Plaintiff undertook to prove the depreciation in rental value by showing the value of the hay stumpage, wholly lost because of the water, also the value of the pasturage lost. This we think a proper mode of arriving at the loss in rental value. It was, perhaps, the most practical method under the circumstances. Plaintiff claimed some inconvenience in getting to some part of his land, because the water west of the roadbed was so high that he could not drive across his own land, but had to go either north or south and pass over the land of neighbors. The court told the jury this inconvenience might be considered in fixing the damages. We have not found any testimony placing any money value upon this inconvenience. It may therefore be doubted whether it should have been mentioned; but we cannot assume that the jury could have found any appreciable sum for this inconvenience. Moreover, the court's attention was not called to the fact that there was no testimony placing a monetary estimate on this item of injury. If the court labored under some misapprehension in regard to the testimony, counsel ought to have made some attempt to put the court right before the jury retired.

There was also an estimate given by plaintiff, over defendant's objection, as to the cost of building a road so as to be able to reach his tillable land without making use of his neighbors'. We think the error in the ruling does not require either a reversal or a reduction of the verdict, because the court specified to the jury the items which they were to consider in fixing the amount of damages, and the road building was not one of the items.

Affirmed.

BROWN, C. J. (concurring).

In my view the rule adopted by the court in McCarty v. St. Paul, M. & M. Ry. Co. 31 Minn. 278, 17 N. W. 616, followed and applied in Evans v. Northern Pacific Ry. Co. 117 Minn. 4, 134 N. W. 294, applies whether the right of way be acquired by purchase or condemnation. In either case the damages awarded and paid are in full for all injuries suffered by the landowner in consequence of the construction of the road; particularly should the rule apply to a case where, as in the case at bar, the condemnation proceedings were conducted, damages ascertained and paid, subsequent to the actual construction of the road. The only theory, therefore, on which an affirmance may be ordered is that the statute referred to in the opinion is a valid exercise of the police power. Upon that question I am not prepared to disagree with the opinion.