# OLE EIKEN v. MINNESOTA & MANITOBA RAILROAD COMPANY AND CANADIAN NATIONAL RAILWAYS.[1]

January 6, 1922.

No. 22,499.

**Indian reservation—rights of railroad company—surface water.**

1. Defendants' right of way across the former Red Lake Indian Reservation was granted by act of Congress and they possess only those rights clearly conferred by that act. The act does not relieve them from liability for damages unnecessarily caused to lands adjoining the right of way, and they are liable to subsequent grantees of the government for negligently failing to provide a proper outlet for surface water turned from its natural course by their road bed.

**Grant of way from Congress does not allow railroad to flood abutting land.**

2. The rule that a railway company is not liable to a landowner in damages for maintaining its railroad in the condition in which it existed when the landowner granted the right of way, has no application to the situation here presented.

**Outlet for surface water—finding sustained.**

3. The finding that defendants caused plaintiff's land to be flooded by negligently failing to provide a sufficient outlet for surface water turned from its natural course by their roadbed, and thereby caused him substantial damage, is sustained by the evidence.

**Question of flood or negligence for the jury.**

4. Whether the damage in the year 1919 resulted wholly from an unprecedented flood or in part from defendants' negligence, was a question for the jury and was properly submitted to them.

**Charge to jury.**

5. We find no error in the charge or in the rulings on the admission of testimony.

Action in the district court for Beltrami county to recover $1,530 damages to land caused by obstruction of surface water. The case was tried before McClenahan, J., who when plaintiff rested denied

[1] Reported in 186 N. W. 226.

defendants' motion to dismiss the action and at the close of the testimony their motion for a directed verdict, and a jury which returned a verdict for $690. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Hector Baxter* and *Brown & Guesmer*, for appellants.

*Middleton & Middleton*, for respondent.

TAYLOR, C.

Alleging that defendants had caused his land to be overflowed by wrongfully and unnecessarily obstructing the natural flow of surface water therefrom, plaintiff brought this action for damages and recovered a verdict. Defendants made an alternative motion for judgment notwithstanding the verdict or for a new trial and appealed from an order denying their motion.

The land involved herein is the west half of the southeast quarter of section 21 in township 161 of range 33 in Beltrami county, and was formerly a part of the Red Lake Indian Reservation. The right of way for a railroad across this reservation was granted to the Minnesota & Manitoba Railroad Company by an act of Congress approved April 17, 1900, and while the land was held by the government to be disposed of for the benefit of the Indians. See Cathcart v. Minnesota & Manitoba R. Co. 133 Minn. 14, 157 N. W. 719. The grant was clearly a grant in praesenti under numerous decisions of the United States Supreme Court. The railroad was constructed across the land in question in the summer of 1900, and has been maintained and operated from the fall of 1900 until the present time with no change except that a small amount of additional ditching has been done for the purpose of improving the drainage. Plaintiff settled upon the land and made homestead entry thereof in May, 1914, and obtained a patent therefor in October, 1918. He took the land subject to the railroad right of way, for the Federal statutes so provided.

Defendants contend that they are not liable in damages for any flooding of the land caused by maintaining the railroad in the condition in which it existed when originally constructed in 1900, and

that plaintiff has no cause of action, for the reason that they have made no change except to improve the drainage of his land. In support of this contention they cite McCarty v. St. Paul M. & M. Ry. Co. 31 Minn. 278, 17 N. W. 616; Radke v. Minneapolis & St. L. Ry. Co. 41 Minn. 350, 43 N. W. 6; and Evans v. N. P. Ry. Co. 117 Minn. 4, 134 N. W. 294. Those cases hold that where a railroad has been constructed across a tract of land and thereafter the landowner conveys the right of way to the company by deed, the company is not liable for damages to the land caused by maintaining the railroad in the condition in which it existed when the deed was given. At the trial plaintiff's attorney, perhaps inadvertently, admitted that the rights of defendants in the right of way were initiated on December 5, 1900, the date on which the map showing the location of the railroad was approved by the secretary of the interior. The railroad, as it now exists, had been constructed prior to that date, and defendants insist that it comes within the rule applied in the cases cited, as the government then owned the land and plaintiff's rights did not attach until some years later.

The rights of the defendants rest entirely upon the act of Congress of April 17, 1900. They took and can claim only what was expressly given in clear and explicit language by that act. As against the government they took nothing by implication or estoppel, and all doubts and uncertainties are to be resolved against them. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L. ed. 773; Dubuque & Pac. Ry. Co. v. Litchfield, 23 How. 66, 16 L. ed. 500; Rice v. Minnesota & N. W. Ry. Co. 66 U. S. 1, Black 358, 17 L. ed. 147; Hannibal & St. J. Ry. Co. v. Missouri River P. Co. 125 U. S. 260, 8 Sup. Ct. 874, 31 L. ed. 731. As said in Leavenworth L. & G. R. Co. v. United States, 92 U. S. 733, 23 L. ed. 634:

"If rights claimed under the Government be set up against it, they must be so clearly defined that there can be no question of the purpose of Congress to confer them. In other words, what is not given expressly, or by necessary implication, is withheld."

The only rights which defendants acquired from the government, or which they can assert against it or its grantees, are those which

are clearly and unmistakably conferred by the act of April 17, 1900. Congress made a direct grant to the Minnesota & Manitoba Company by that statute and has granted no rights of any kind to either defendant since that date. Whatever rights they possess they must trace to and find authority for in that statute. That statute contains nothing which relieves them from liability for damages resulting from negligence in constructing, maintaining or operating the railroad. The statute gave them the right to make a reasonable use of the right of way for railroad purposes, but did not give them the right, as against the government or its subsequent grantees, to overflow other land by unnecessarily casting surface water upon it. Their grant did not absolve them from the duty resting upon railway companies as well as upon other landowners so to use their own as to avoid unnecessary and unreasonable injury to others. But even conceding that the rule contended for could be invoked against the government under such a grant, it would not apply in the present case, for the grant was made before the railroad was constructed. Jungblum v. Minneapolis, N. U. & S. W. Ry. Co. 70 Minn. 153, 72 N. W. 971; Peterson v. Northern Pacific Ry. Co. 132 Minn. 265, 156 N. W. 121. Defendants cannot well say that the admission that their rights were initiated in December, 1900, should be taken to mean that their rights were not conferred by the act of April 17, 1900, for whatever rights they have in the land were given by that act and without it they have none.

This land, like other lands in that vicinity, is low, flat and naturally rather wet. The natural flow of the surface water is northerly or northeasterly, but there is no natural channel or watercourse to carry it off. Defendant's railroad, extending in a northwesterly and southeasterly direction, crosses the northeast corner of the land and prevents the surface water from escaping therefrom except through a ditch constructed by defendants, which extends along the south side of their track from the low ground on plaintiff's land to a creek some distance to the east. This ditch passes through a low ridge just east of plaintiff's land; and the principal controversy was whether the ditch, where it crosses this ridge, was large enough and deep enough to carry off the surface water which the railroad embankment turned from its natural course.

Plaintiff's evidence tends to show that the ditch did not furnish an adequate outlet for the water and that it backed up and flooded portions of his meadow and low land for that reason. Defendants' evidence tends to show that the ditch furnished an ample outlet for the water and that plaintiff's land would have been flooded to the same extent if neither railroad embankment nor ditch had ever been constructed. Whether defendants had provided a proper and adequate ditch to carry off the water, or by negligently failing to do so had unnecessarily cast it back upon plaintiff's land, were, under the evidence, questions for the jury to answer, and they answered them adversely to defendants.

We find no merit in defendants' contention that the ditch may have been overloaded by the water discharged into it from a small ditch about 20 rods in length constructed for the purpose of draining a low place of about two acres near plaintiff's buildings.

Defendants insist that plaintiff failed to prove any substantial damage. Plaintiff's farming operations were not very extensive, but, according to his testimony, the larger part of the crops planted were destroyed by the water. The evidence is clearly sufficient to sustain a verdict for damages in some amount. The testimony was directed to the proper measure of damages—diminution in rental value resulting from the flooding—and, although we may think that the witnesses overestimated the loss in rental value, the amount was for the jury to determine and their verdict is not attacked as excessive.

Defendants urge that the court ought to have granted their request to withdraw from the jury the claim for damages in the year 1919, on the ground that the damages in that year were caused by an unprecedented flood. It appears that there was an extraordinary rainfall in the latter part of June and first part of July which caused an unusual flood, but the jury could find that the damage in that season was not caused wholly by an unusual flood. It was also claimed that there was an extraordinary flood in 1916. The court instructed the jury that defendants were not required to provide for extraordinary floods, called their attention to the flood of 1919, and told them it was for them to determine whether a rainfall or

flood in any year involved in the case was extraordinary or not. Later the court recurred to the claim concerning the conditions in 1919, and explained what was meant by the expression "act of God", and told the jury:

"You will not be at liberty to charge the defendants with any damage that may have resulted from that rainfall if you are satisfied by a fair preponderance of the evidence that such damage is traceable to an act of God and not to the negligence of the defendants."

We think defendants have no ground to complain of the action of the court.

Defendants assign as error various rulings of the court on the admission of testimony. We have examined them all and find no error.

We think defendants place an erroneous construction upon the charge of the court concerning the duty of defendants to provide a culvert across their roadbed. There was a culvert across the roadbed some 1,400 feet west of plaintiff's land connecting with a natural depression which carried off surface water, and there was evidence that it was defective in that considerable water flowing from the west, instead of passing through it, flowed past it down upon plaintiff's land. The court referred to this culvert in giving the portion of the charge complained of, and told the jury that he gave it because there was a conflict in the testimony as to whether this culvert was or was not defective. We find no warrant for defendants' contention that the jury may have understood from the general form of the statement that they were at liberty to find that defendants were negligent in failing to construct a culvert at some other point, although no such claim had been made and there was no evidence tending to show a culvert was feasible at any other point.

Our examination of the record discloses nothing which would justify a reversal and the order is affirmed.